Carroll,
No. 5785.

FRED DUNN d/b/a FRED DUNN REAL ESTATE & a.

*v.*

WILLARD STAPLES & a., d/b/a ABBOTT'S GENERAL STORE.

Argued October 1, 1968.
Decided December 31, 1968.

*Falardeau & Mahan* (*Mr. Richard W. Mahan* orally), for the plaintiffs.

*James J. Kalled* (by brief and orally), for the defendants.

DUNCAN, J. The individual plaintiff and Orchard House, Inc., as co-brokers, seek to recover of the defendants husband and wife a commission of $8,000 for services in procuring purchasers for a general store in Ossipee. The action was tried by the Court (*Flynn*, J.) and a verdict returned for the defendants. Thereafter the plaintiffs' motion to set the verdict aside was denied subject to their exception. All questions of law presented by the exception were reserved and transferred by the Presiding Justice.

Since no record was made of the trial, the facts of the case, by agreement of the parties, are taken from the findings of the Trial Court. From these findings it appears that in June 1965 the defendants listed their store for sale with the plaintiff Dunn for a net price of $75,000. It was orally agreed it would be offered at $83,000, and the plaintiff's commission would be

$8,000, which should not be payable "if the sale was not finalized, unless the failure to finalize was due to the fault of the defendants."

In December 1965, Orchard House Inc. became a co-broker, and in June 1966 the president of Orchard House Inc. interested two non-residents, Mr. and Mrs. Norman Rolband, in the property. Mr. Rolband gave a deposit of $1,500 to the agent, and orally offered the listed price of $83,000.

The defendant Willard J. Staples did not participate in these negotiations, but understood that the deposit was taken subject to the drafting of a purchase and sale agreement satisfactory to the parties. An agreement was prepared by an attorney at the plaintiffs' request, and submitted to Mrs. Staples who signed it on June 22, 1966. She and Mr. Staples were then having "domestic difficulties." He objected to certain provisions of the agreement, and wished to consult his attorney about them. On July 6, 1966, the Rolbands signed the agreement as purchasers. The agreement was conditioned upon the buyers obtaining financing at existing bank rates and provided that the transaction should be closed on or before July 17, 1966. However Mr. Staples did not sign the agreement, nor did he consult his attorney about it before July 17, 1966.

Among the provisions to which Mr. Staples objected was a provision that the $1,500 deposit should be forfeited in the event of default by the buyers, and that the sellers should have no right of action for any further amount. Another provision to which he objected gave the buyers the option of cancelling the agreement prior to sale in the event of damage to the real and personal property in excess of $1,000. A provision which Mr. Staples also found objectionable was inserted at the request of his wife, and provided that the property should not at any future time be conveyed to either of the sellers.

The Trial Court found and ruled that the "failure to finalize the sale was not due to the fault of the defendants nor was [their] conduct arbitrary, without reasonable cause or in bad faith. Mr. Staples was entitled to have his property sold on terms that were satisfactory to him, and it was reasonably contemplated at the time of the listing that there would be further terms for the sale beyond merely the amount of the selling price and the broker's commission." These rulings were not erroneous. The provisions objected to could be found to be departures from

the terms originally proposed by the defendants. They were not so trivial as to require a finding or ruling that objection to them was arbitrary or unreasonable. Unlike the seller in *Showers* v. *Rober,* 92 Cal. App. 171, relied upon by the plaintiffs, Staples did not refuse to proceed with the negotiations without pointing out his objections to the terms proposed. Moreover the agreement contemplated that Mr. Staples and his wife should both become parties to it as joint sellers, but it was never executed by Mr. Staples.

On July 25, 1966, the Rolbands brought a bill in equity against the defendants herein, seeking specific performance of the partially executed agreement; and on August 3, 1966, the plaintiffs brought this action to recover their commission. On August 11, 1966, Rolband interviewed Mr. Staples and reached a tentative agreement that Staples would sign a "simple" purchase and sale agreement with the understanding that the pending suits would be dismissed. The new agreement was prepared, and delivered by Rolband to the defendants, both of whom signed it on August 13, 1966. It provided for a price of $83,000 and acknowledged receipt of $1,500 on account. It further provided that the sale should be consummated between September 1, 1966 and September 10, 1966. The concluding provision was: "All legal actions between the parties shall be settled as of date of sale."

Mr. Rolband signed the new agreement, although his wife refused to do so. However she later participated in further negotiations with the defendants. Mr. Rolband in the meantime had purchased a home in New Hampshire and was unable to raise the necessary funds to purchase the store. In late September he proposed that Staples reduce the price, or accept a second mortgage and co-sign a note for the down payment. Mr. Staples would not agree to do so. After October 10, Orchard House returned the $1,500 deposit to Rolband.

The Court ruled that the agreement of July 1966 "was discharged and rescinded on August 13, 1966 when the Staples and Mr. Rolband expressly agreed to substitute [the August agreement for the previous agreement] as an entirely new and independent simple contract relating to the same subject matter." The Court found that the plaintiff agents knew of and acquiesced in the new agreement, and undertook to arrange for financing for the purchaser in accordance with it. It ruled that they "thus

waived and discharged any rights that might have accrued to them with respect to [the first agreement]." Since Mr. Rolband was unable to perform the August agreement within a reasonable time, the Court ruled that "the plaintiffs did not produce a financially able purchaser . . . in order to be entitled to their commission."

We find no error in this conclusion. Under the terms of the agency agreement, the plaintiffs acquired no rights arising out of the first sales agreement, even though the Court found that the purchasers were at that time "willing and able" to purchase, since the buyers were not willing to buy on terms reasonably acceptable to the sellers. *Philbrick* v. *Chase,* 95 N. H. 82, 84. Since after the signing of the second agreement the buyers were unable to finance the purchase, the plaintiffs are not entitled to a commission. *Gingras* v. *Stark Estates,* 109 N. H. 242.

*Judgment on the verdict.*

All concurred.