Strafford
No. 6932

WILLIAM J. ROWE

v.

PUBLIC SERVICE COMPANY OF NEW HAMPSHIRE

SAME

v.

SEAWARD CONSTRUCTION COMPANY, INC.

July 31, 1975

*Calderwood & Ouellette (Mr. Raymond R. Ouellette* orally) for the plaintiff.

*Sulloway, Hollis, Godfrey & Soden* and *Michael M. Lonergan (Mr. Lonergan* orally) for Public Service Company.

*Wadleigh, Starr, Peters, Dunn & Kohls* and *James S. Yakovakis (Mr. Yakovakis* orally) for Seaward Construction Company.

LAMPRON, J. Action to recover damages for injuries to plaintiff's yearling horse incurred on plaintiff's property in Rochester on September 23, 1968. At the close of plaintiff's evidence motions for nonsuit by Public Service, Seaward, and another defendant Biron & Sons were granted by *Mullavey,* J. Plaintiff did not except to the granting of the Biron motion. His exceptions to the nonsuits granted to the others were reserved and transferred. The sole issue to be decided is whether on the evidence presented the trial court properly withdrew the case from the consideration of the jury. The standard of review is whether the evidence and all reasonable inferences therefrom, construed most favorably to the plaintiff, would permit a jury to find in his favor. *Muzzy v. Rockingham County Trust Co.,* 113 N.H. 520, 521, 309 A.2d 893, 894 (1973).

Plaintiff owned a 60-acre farm on Ten Rod Road in Rochester which he used to breed and train horses for sulky racing. During the spring of 1968 through the fall of 1969, Public Service erected a transmission line over 30 miles long from Maine across to Rochester to end in Derry. The Niles property adjoined the Rowe property on the east and the Russell property adjoined the Rowe premises on the west. A small triangular piece of about 2 acres of the Rowe land was part of the right of way for the electric line.

On September 23, 1968, plaintiff was notified that one of the horses kept on his farm had received an injury. It was found to be mainly a severe wound on the right front leg consistent with wire cuts. The son of an employee of the plaintiff was sent to examine the premises. He found a wire fence down in a pasture which could be reached by the horses. "It looked as though it was done with a dozer . . . the wire was pulled right from the stakes and what was fastened to the trees, and it was down . . . just took it right out . . . stakes and everything was gone." This was near the Niles property.

The manner of operation in the erection of the transmission lines was in short the following. Biron & Sons, under a contract with Public Service, cleared the right of way of trees, stumps, and all cuttings. It used bulldozers, trucks and tractors. Thereafter a Public Service crew would move onto the cleared area to stake the exact locations of the poles. Seaward, working on a cost plus agreement with Public Service, would then move in and install the poles. It used earth augers, backhoes, loading cranes, and various types of trucks. Public Service employees supervised the operations.

Plaintiff agreed that there was no evidence from which it could

be found that any negligence on the part of Biron & Sons caused the injury to the horse. There was no evidence that Public Service operated any machinery of the type which could have torn down the fence in the manner described. Nor was there evidence that its employees otherwise caused the fence to be down on the ground. Hence any active negligence in tearing down the fence in question must have been that of Seaward. Negligence of Public Service would be in the nature of *respondeat superior*.

There being no direct evidence of negligence plaintiff relied on circumstantial evidence and particularly on the doctrine of *res ipsa loquitur*, that is, that the facts of the occurrence warranted the inference of negligence. *Blankenship v. Wagner*, 261 Md. 37, 41, 273 A.2d 412, 414 (1971). For that doctrine to apply, it is necessary that (1) the accident be of a kind which ordinarily does not occur in the absence of someone's negligence; (2) it must be caused by an agency or instrumentality within the exclusive control of the defendant; and (3) other responsible causes are sufficiently eliminated by the evidence. *Smith v. Company*, 97 N.H. 522, 524, 92 A.2d 658, 659 (1952); Restatement (Second) of Torts § 328 D (1) (1965). This doctrine does not do away with the well established rules of law that a person asserting negligence has the burden of proof and that the mere fact of injury does not indicate negligence on the part of anyone. *Gobbi v. Moulton*, 108 N.H. 183, 185, 230 A.2d 747, 749 (1967); W. Prosser, Law of Torts § 39, at 218 (4th ed. 1971).

Plaintiff introduced evidence that all fences on his property had been inspected in the spring of 1968 and found intact, except for two where snowmobile operators had cut the wires. These were replaced. There were other periodic inspections through the spring and summer, the last being about 4 or 5 weeks before this accident of September 23, 1968, and nothing unusual was found. There was evidence that the piece of fence on which the horse was hurt had been replaced by Public Service after the accident. On August 17, 1968, Seaward set structures (2 poles connected by a cross-piece) 39, 38, 37 and 36 on the adjoining Russell property within 150 feet of the Rowe premises. Structures 35, 34 were installed on the Rowe premises according to Public Service records in December 1968. Plaintiff produced evidence of erasures on these records which he claims would show that those two structures were installed in August 1968 thus placing Seaward on his property at that time. The erasures were not denied.

However, plaintiff's fence inspector testified that a number of

natural causes, including falling limbs, can and frequently do cause fences to come down. There was no evidence that anyone saw equipment on the Rowe premises at or near the time of the accident. There was evidence that Seaward reached Ten Rod Road some distance north of the Rowe property in August 1968. Because Public Service had not yet obtained an easement over the Rowe premises, Seaward's crews were detoured around the Niles and Rowe properties for a distance of five miles to reach the Russell property adjoining the Rowe property on the west.

There was testimony that structures 39, 38, 37, 36 were then installed on the Russell property and that, because of a swamp between it and the Rowe property and the easement problem, Seaward then moved away from the Rowe property and returned in December 1968 to install poles 35 and 34 thereon. There was evidence that the erasure on the record was necessitated by this change in plans. Disbelief of this testimony would not constitute evidence that Seaward was on the Rowe premises in August. *Bissonnette v. Cormier*, 100 N.H. 197, 199, 122 A.2d 257, 258 (1956). There was also evidence that Biron cleared the Rowe property in November 1968.

Plaintiff maintains that on all the evidence presented the jury could reasonably infer that Seaward and Public Service were negligent and that their negligence caused the injury to his horse. However since the probabilities in favor of the plaintiff rested solely on conjecture, the trial court properly granted the motions for nonsuit.

*Exceptions overruled.*

All concurred.