Hillsborough-northern judicial district
No. 92-547

JOAN BLAIS, d/b/a JOAN BLAIS REALTY

v.

ROBERT J. AND LAURETTE REMILLARD

June 30, 1994

*Devine, Millimet & Branch, P.A.*, of Manchester (*Richard E. Mills* on the brief and orally), for the plaintiff.

*Wadleigh, Starr, Peters, Dunn & Chiesa*, of Manchester (*Eugene M. Van Loan III* on the brief and orally), for the defendants.

THAYER, J.   This case involves a claim for a real estate commission which the plaintiff, Joan Blais, d/b/a Joan Blais Realty, contends

was owing from the defendants, Robert and Laurette Remillard. The plaintiff appeals the ruling of the Superior Court (*Hampsey*, J.) granting the defendants' motion for a directed verdict at the close of the plaintiff's case. We reverse and remand.

Based upon the record, a reasonable jury could have found the following facts. In May 1985, Joan Blais' employee, real estate broker Paul Dionne, learned that the defendants had been offered $3.4 million for a group of rental housing units (the "property") located in Manchester. Based upon his knowledge of the prevailing real estate market, he thought that he could find a purchaser who would pay $4 million. He met with defendant Robert Remillard, who stated that he would be willing to sell the property for $50,000 down and the remainder of the $4 million sale price in cash at closing. Dionne agreed to list the property as an "open listing" for a contracted-for commission of $200,000 on a $4 million sale. Remillard signed a listing agreement on these terms on May 21, 1985.

Dionne showed the property to a group of individuals from Massachusetts who then submitted a proposed purchase and sale agreement for the full $4 million, but with different financing terms than those proposed by the seller. The purchasers proposed that $2.8 million be financed through a first mortgage with a bank, $300,000 be paid in cash at closing, and the remaining $900,000 be financed through a second mortgage to be held by the sellers. Remillard rejected the proposed purchase and sale agreement, insisting upon documents prepared by his own attorney, William Tucker. The purchase and sale agreement prepared by Tucker (the "Tucker contract") incorporated the financing method proposed by the prospective purchasers. These documents were presented to the prospective purchasers who rejected them and bowed out of the deal. Another interested purchaser, Donald Jsirandanis, made an offer that did not conform to the Tucker contract. Remillard rejected the offer. Jsirandanis twice met with Remillard and Dionne in order to attempt to negotiate a deal. As part of these negotiations, Jsirandanis offered Remillard a portfolio of properties that he owned as additional security. Remillard did not agree to any of Jsirandanis' proposals, so finally, at the second meeting, Jsirandanis agreed to Remillard's terms with an exception: he wanted to change the Tucker contract financing slightly to allow for a $3 million first mortgage and for only $100,000 to be paid in cash. Remillard would finance $900,000 through a second mortgage on the property. Remillard agreed to this change. Jsirandanis did not withdraw his offer of additional security although Remillard never stated that the

additional security was necessary for the deal as it was then structured. Remillard and Jsirandanis also agreed on an interest rate for the second mortgage of ten percent for the first six months and twelve percent thereafter. Jsirandanis stated that he wanted to have his attorney approve the contract before he signed it. At the end of the meeting, Jsirandanis and Remillard shook hands and "talked about the finality of finally having a deal." Immediately after the meeting, Jsirandanis celebrated with his secretary because he felt that the deal was done—that the parties had agreed on everything. Jsirandanis put his attorney on notice to expect documents from Remillard's attorney, but they were never provided, despite repeated attempts to contact Remillard's attorney.

While Jsirandanis awaited the arrival of the documents, he met once more with Remillard, who provided him with rent rolls for the property and other information. Remillard also agreed to help Jsirandanis after the closing to manage the property for a short time. Remillard suggested that they postpone the sale of the property until the following spring so that Jsirandanis would not have to pay for heat over the winter, and so that Remillard would not have to pay a real estate broker's commission. Jsirandanis made this proposal known to the Blais agency; Joan Blais then sent an attorney's demand letter to Remillard's attorney stating that they had supplied a ready, willing, and able purchaser for the property and were entitled to a substantial commission. The instant litigation ensued.

■ A real estate broker is entitled to a commission if the broker procures a buyer who is ready, willing, and able to purchase the property to be sold upon the terms proposed by or acceptable to the seller. *Bell v. Warren Dev. Corp.*, 114 N.H. 267, 268, 319 A.2d 299, 300 (1974); *Richardson v. Sibley*, 101 N.H. 377, 379, 143 A.2d 414, 416 (1958); *see Dunn v. Staples*, 109 N.H. 251, 252, 248 A.2d 635, 638 (1968). The broker's duty is performed when the minds of the parties meet on an agreed price and terms of sale; the sale need not be completed in order for the broker to earn the commission where the failure to close is due to the fault of the seller rather than of the buyer. *Russo v. Slawsby*, 84 N.H. 89, 91, 146 A. 508, 509 (1929); *see Roger Coleman Associates, Inc. v. Retsof Co. Trust*, 117 N.H. 81, 84, 369 A.2d 1143, 1145 (1977). If the terms proposed by the prospective purchaser vary in any material aspect from those proposed by the seller, the broker seeking a commission bears the burden to prove that these different terms were accepted by the seller before the broker is entitled to a commission. *See Bell*, 114 N.H. at 269, 319 A.2d at 300–01.

■ The issue on appeal involves whether the defendants, the owners of certain commercial real estate, came to a meeting of the minds with a prospective purchaser of the property as to the essential terms of the proposed sale. A "meeting of the minds" requires that there be manifest agreement; mere mental assent is not sufficient. *See Kilroe v. Troast*, 117 N.H. 598, 601, 376 A.2d 131, 133 (1977). The trial court found, and the defendant argues, that no meeting of the minds was reached because the agreement between the parties was conditioned upon review of the proposed contract by the purchaser's attorney and the seller's acceptance of certain properties to secure a second mortgage he would hold. The plaintiff contends that the trial court erred in this determination, arguing that a reasonable jury could have found that the parties had come to a meeting of the minds on all essential terms of the sale, and that all that remained was the memorialization of those terms in a purchase and sales contract.

■ The standard of review of a trial court's decision to direct the verdict in favor of the defendant at the close of the plaintiff's case is "whether the evidence and all reasonable inferences therefrom, construed most favorably to the plaintiff, would permit a jury to find in [the plaintiff's] favor." *Foss v. Byrnes Chevrolet, Inc.*, 119 N.H. 808, 809, 408 A.2d 415, 415 (1979) (brackets omitted). In conducting its analysis of the evidence, the trial court should not assess the weight to be given to testimony; rather, questions of weight are properly left to the jury. *Id.* at 811, 408 A.2d at 416. The plaintiff may not get past a directed verdict, however, by presenting evidence that is merely conjectural in nature. *See Rowe v. Public Serv. Co.*, 115 N.H. 397, 400, 342 A.2d 656, 659 (1975). Rather, the plaintiff must present sufficient evidence to satisfy the burden of proof such that a reasonable jury could find in her favor. *See id.* at 398, 342 A.2d at 657.

The defendants argue that the trial court was not required to accept the evidence because it is merely conclusory in nature. *See, e.g., Provencal v. Vermont Mut. Ins. Co.*, 132 N.H. 742, 745, 571 A.2d 276, 278 (1990). We disagree. While testimony that the parties "had a deal" may be conclusory, testimony that the parties verbally agreed to pricing and financing terms is not. The defendants' argument that Remillard had not specifically chosen the properties from the portfolio with which to back up the second mortgage also fails. Jsirandanis testified that the additional security was not necessary to secure the second mortgage, and a reasonable jury could have accepted this testimony as true and could have determined that the additional se-

curity was not a material term of the agreement. Finally, the defendants argue that the buyer's reservation of the right to have his attorney review the contracts was a condition precedent to the buyer's acceptance of the terms of the contract and, thus, that there was no actual meeting of the minds. While a reasonable jury might have found in the defendants' favor, it need not have done so and could have found the proposed review merely perfunctory.

▮ A reasonable jury could have found that the parties had come to agreement on the property to be sold, the price to be paid, and the financing structure to be used, and that all that remained was the ministerial revision of the contract which was prevented by the sellers, not by the buyer. *See Retsof*, 117 N.H. at 84, 369 A.2d at 1145. Thus, a jury could have found that the plaintiff had earned her commission by successfully providing a ready, willing and able buyer to purchase on the sellers' terms. The directed verdict was issued in error.

*Reversed and remanded.*

All concurred.