**Vera HEATH, as Personal Representative of the Estate of Randy Heath, Deceased, Plaintiff,**

v.

**CITY OF HIALEAH, a municipal corporation, et al., Defendants.**

**No. 80–399–CIV–WMH.**

United States District Court, S.D. Florida.

April 7, 1983.

Michael J. Neimand, Law office of Jesse J. McCrary, Jr., Miami, Fla., for plaintiff.

Michael A. Mullen, Fowler, White, Burnett, Hurely, Banick & Strickroot, Miami, Fla., for defendant.

## MEMORANDUM OPINION GRANTING PLAINTIFF'S MOTION TO APPLY THE FEDERAL COMMON LAW OF SURVIVORSHIP IN THE POSSIBLE FUTURE ASSESSMENT OF DAMAGES

HOEVELER, District Judge.

THIS ACTION arises out of the fatal shooting of Randy Heath, a twenty two year old black, by defendant, Shockley. Shockley, at the time of the shooting, was an off-duty police officer employed by the Hialeah Police Department. Vera Heath, mother of the victim, and serving as Personal Representative of the Estate of Randy Heath, initiated the law suit which raised the following three claims. First, it is alleged that the defendant "summarily executed" Randy Heath in violation of Heath's constitutional rights. Second, it is alleged that several police officers in the Hialeah Police Department combined and conspired to cover-up the circumstances surrounding the shooting. Third, it is alleged that the City of Hialeah and its police offi-

cials contributed to the events by allowing the police in general, and Officer Shockley in particular, to "moonlight." The action is brought under 42 U.S.C. § 1983.

The estate seeks compensatory damages for Randy Heath's pain and suffering, future earnings, medical expenses, and funeral expenses. Punitive damages are also demanded.

In order to insure the availability of such relief, the plaintiff has moved this Court to apply the federal common law of survivorship instead of the relevant Florida statute. The defendants have strenuously argued the applicability of the Florida Wrongful Death Act, see § 768.16 et seq. Specifically, § 768.21[1] sets forth the compensable damages awardable to the survivors depending upon their relationship to the deceased.

**1. § 768.21 DAMAGES**

All potential beneficiaries of a recovery for wrongful death, including the decedents estate, shall be identified in the complaint, and their relationships to the decedent shall be alleged. Damages may be awarded as follows:

1) Each survivor may recover the value of lost support and services from the date of the decedent's injury to his death, with interest, and future loss of support and services from the date of death and reduced to present value. In evaluating loss of support and services, the survivor's relationship to the decedent, the amount of the decedent's probable net income available for distribution to the particular survivor and the replacement value of the decedent's services to the survivor may be considered. In computing the duration of future losses, the joint life expectancies of the survivor and the decedent and the period of minority, in the case of healthy minor children, may be considered.

2) The surviving spouse may also recover for loss of the decedent's companionship and protection and for mental pain and suffering from the date of the injury.

3) Minor children of the decedent may also recover for lost parental companionship, instruction, and guidance and for mental pain and suffering from the date of the injury.

4) Each parent of a deceased minor child may also recover for mental pain and suffering from the date of the injury.

5) Medical or funeral expenses due to the decedent's injury or death may be recovered by a survivor who has paid them.

These arguments present the issue before the Court. Does the civil rights framework as established by Congress and interpreted by the Supreme Court, contemplate the utilization of the federal or the state law of survivorship in a fact situation of the type presented here?

42 U.S.C. § 1988[2] establishes a three step formula for the selection of the appropriate substantive law in civil rights cases. First it must be decided whether the federal civil rights framework is deficient in furnishing the appropriate rule. If that question is answered affirmatively, the courts must then look to the pertinent state law to fill the vacuum. Finally, the state law must be disregarded in favor of the federal common law if the state law is inconsistent with the meaning and purpose of the federal statutory and constitutional law.

6) The decedent's personal representative may recover for the decedent's estate the following:

a) Loss of earnings of the deceased from the date of the injury to the date of death, less lost support of the survivors excluding contributions in kind, with interest. Loss of the prospective net accumulations of an estate, which might reasonably have been expected but for the wrongful death, reduced to present money value, may also be recovered:

1) If the decedent's survivors include a surviving spouse or lineal descendants; or

2) If the decedent is not a minor child as defined in s. 768.18(1)

b) Medical or funeral expenses due to the decedent's injury or death that have become a charge against his estate or that were paid by or on behalf of decedent, excluding amounts recoverable under subsection (5).

c) Evidence of remarriage of the decedent's spouse is admissable.

7) All awards for the decedent's estate are subject to the claims of creditors who have complied with the requirements of probate law concerning claims.

2. The relevant language in § 1988 reads, "but in all cases where they (the civil rights laws) are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against law, the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil or criminal cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States."

This is a case of first impression. While a flurry of recent Supreme Court opinions have sought to survey the role of state law in filling in the interstices of the civil rights statutes, *Board of Regents v. Tomanio*, 446 U.S. 478, 100 S.Ct. 1790, 64 L.Ed.2d 440 (1980); *Carlson v. Green*, 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980); *Robertson v. Wegmann*, 436 U.S. 584, 98 S.Ct. 1991, 56 L.Ed.2d 554 (1978); *Jones v. Hildebrant*, 432 U.S. 183, 97 S.Ct. 2283, 53 L.Ed.2d 209 (1977), none have reached the issue upon which the damage aspect of this case turns. In *Jones v. Hildebrant*, a case similar to the one at bar, the Supreme Court was forced to dismiss a previously granted writ of certiorari after the issues raised in the oral argument differed from those defined in the petition. The Fifth Circuit has held that a wrongful death claim under 42 U.S.C. § 1983 effectively survives the death of the person wronged. *Brazier v. Cherry*, 293 F.2d 401, *cert. denied*, 368 U.S. 921, 82 S.Ct. 243, 7 L.Ed.2d 136 (1961). In *Brazier*, the Georgia wrongful death laws favored the life of the claim after the death of the victim.

In Florida the state laws do not favor the life of the claim after the death of the victim. In 1972, Florida revised its wrongful death laws, *see* § 768.16 *et seq.* § 768.-20 provides that:

"The action shall be brought by the decedent's personal representative, who shall recover for the benefit of the decedent's survivors and estate all damages, as specified in this act, caused by the injury resulting in death. When a personal injury to the decedent results in his death, no action for the personal injury shall survive, and any such action pending at the time of the death shall abate. The wrongdoer's personal representative shall be the defendant if the wrongdoer dies before or pending the action. A defense that would bar or reduce a survivor's recovery if he were the plaintiff may be asserted against him, but shall not affect the recovery of any other survivor."

§ 768.21, as mentioned previously, delineates the specifically compensable losses suffered by the decedent and his devisees and distributees. *See* footnote 1. As applied to the instant plaintiff, these sections speaking, offer little more than the cost of a casket. As Plaintiff's own brief admits, "if Florida's Wrongful Death Act was to be applied herein, it would effectively deny relief to Plaintiff's Decedent for a violation of his Civil Rights, inasmuch as the Decedent was an emancipated adult male with no beneficiaries or survivors entitled to relief thereunder." Simply put, the plaintiff would have rights without remedies.

The cases uniformly agree that the civil rights laws are facially deficient in providing rules of survivorship, *Robertson, supra* 436 U.S. at 588, 98 S.Ct. at 1994. The crux of the matter is then whether the Florida statute is compatible with the federal civil rights plan and should therefore be applied.

In a recent Supreme Court case, Louisiana's law of survivorship was allowed to abate a § 1983 claim. *Robertson v. Wegmann*, 436 U.S. 584, 98 S.Ct. 1991, 56 L.Ed.2d 554 (1980). *Robertson* and the case, however, are quite different. *Robertson* was initiated by one Clay Shaw, who had been accused, prosecuted, and re-prosecuted on charges stemming from the assassination of President John F. Kennedy. The plaintiff claimed that these charges had been maliciously brought. For that reason he commenced a civil suit against then District Attorney Garrison, among others. Three months prior to the trial, the plaintiff died of causes completely unrelated to the pending law suit. The executor, Wegmann, sought to be substituted as plaintiff in order to maintain the lawsuit. The Supreme Court found the Louisiana statute barred the further prosecution of the claim. The Court reasoned that the mere fact of abatement of a particular law suit is insufficient ground to declare state law inconsistent with federal law. In that ruling Justice Marshall noted:

"Our holding today is a narrow one, limited to situations in which no claim is made that state law generally is inhospitable to survival of § 1983 actions and in which the

particular application of state survivorship law, while it may cause abatement of the particular action, has no independent adverse effect on the policies underlying § 1983 ... We intimate no view, moreover, about whether abatement based on state law could be allowed in a situation in which deprivation of federal rights cause death." *Robertson, supra* at 594.

In *Robertson,* death was an intervening circumstance; in the instant case, it gives rise to the § 1983 claim itself. The test for determining the proper damage standard is whether application of the state law would be inconsistent with the federal policy underlying the cause in question. *Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975). The policies underlying § 1983 causes include compensation of persons injured by deprivation of federal rights and prevention of abuses of power by those acting under color of state law. *Robertson, supra,* 436 U.S. at 591, 98 S.Ct. at 1995. The *Robertson* court determined that the Louisiana statute did not "adversely affect § 1983's role in preventing official illegality." *Id.* at 592, 98 S.Ct. at 1996. Footnote 10 on the same page further explained,

"In order to find even a marginal influence on behavior as a result of Louisiana's survivorship provisions, one would have to make the rather farfetched assumptions that a state official had both the desire and the ability deliberately to select as victims only those persons who would die before conclusion of the § 1983 suit for reasons entirely unconnected with the official illegality and who would not be survived by any close relatives."

Where death is the cause of the suit, however, the deleterious effect on the policy of deterrence is plainer to see. Indeed, it would be far more profitable to kill the plaintiff than to scratch him. *Prosser, Law of Torts,* p. 902 (4th Ed.1971).

The Supreme Court has already evidenced particular solicitude for a plaintiff wrongfully killed in violation of constitutional right. *Carlson v. Green,* 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980). *Carl-son* involved a *Bivens*-type suit brought by the mother of a federal prisoner who allegedly died due to the purposeful neglect of his asthmatic condition by the prison authorities. *See, Bivens v. Six Unknown Named Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). The District Court had dismissed the case despite it's recognition of the rights asserted, because the Indiana wrongful death statute barred recovery of the requisite jurisdictional amount. The circuit court reversed the dismissal, and the Supreme Court affirmed.

Justice Brennan, writing for the majority, noted that *Bivens* suits are creations of the federal law and therefore "only a uniform federal rule of survivorship will suffice." The same reasoning necessarily applies to § 1983 actions, since they too are "creations of federal law."

Admittedly, the *Carlson* court's consideration was limited to the interface between state laws of survivorship and *Bivens* suits. Both Justices Powell and Stewart, however, expressly noted in their concurrences that they would reach the same result in § 1983 cases. They pointed out that a different conclusion would result in different rules governing the liability of federal and state officers for similar constitutional wrongs. *See Carlson, supra* at 29, 100 S.Ct. at 1477.

42 U.S.C. § 1983 enjoys a special prominence in our system of liberty. Its sweep is as broad as its language. *Griffin v. Breckenridge,* 403 U.S. 88, 29 L.Ed.2d 338, 91 S.Ct. 1790 (1971), *quoting, U.S. v. Price,* 383 U.S. 787, 86 S.Ct. 1152, 16 L.Ed.2d 267 (1966). It is too much to believe that Congress would adopt broad language, and the Supreme Court broad interpretation, in every respect, but for the phrase "inconsistent with the Constitution and the laws of the United States." The result of such an exception would frustrate the limitations on a restrictive state statute. While the clearly inconsistent state law would be one that openly and avowedly sought to limit the federal civil rights laws, potential incompatibility must be demonstrably broader than that. Regardless of the law applied in a particular case, however, it is clear that the

844

ultimate rule adopted under § 1983 be a federal rule responsive to the need which arises whenever a federal right is impaired. *Robertson, supra,* 436 U.S. at 588, 98 S.Ct. at 1994, *quoting, Moor v. County of Alameda,* 411 U.S. 693, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973). This Court does not find the Florida statute inconsistent with federal law simply because the statute might cause the plaintiff to lose the litigation, *Robertson, supra,* 436 U.S. at 593, 98 S.Ct. at 1996. This ruling is based instead upon an appreciation of the primacy of federal rights. Since *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), it has been firmly established in the law that it is no answer that a State has a law which if enforced affords relief. The federal remedy supplements the state remedy, and the latter need not be first sought and refused before the federal one is invoked. The independent vitality of 42 U.S.C. § 1983 has been reaffirmed many times by the Supreme Court. *Carey v. Piphus,* 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978).

We are not dealing here with state rules that regulate the time in which to assert a right, *cf. Board of Regents v. Tomanio,* 446 U.S. 478, 100 S.Ct. 1790, 64 L.Ed.2d 440 (1980), but the preservation of the right itself. Note that where a state statute of limitation would allow litigants only ten days in which to advance a § 1983 claim, the Fifth Circuit dismissed the statute of limitation as inconsistent with federal purposes. *Franklin v. City of Marks,* 439 F.2d 665 (5th Cir.1971).

At bottom, § 1983 was the product of a vast transformation in the concepts of federalism. The very purpose of § 1983 was to interpose the federal courts between the States and the people, as guardians of the people's federal rights—to protect the people from unconstitutional action under color of state law. *Mitchum v. Foster,* 407 U.S. 225, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1971). This Court has neither the inclination nor the power to reverse that process in pursuit of formalistic symmetry. Considerations of deterrence and federal supremacy, as well as justice, require us to grant plaintiff's

motion. Hereafter, the federal common law will govern any future assessment of damages in this case.