515 So.2d 614 (1987)
Thomas PIERRE and Pauline Hart, Individually and on Behalf of the Estate of Demetrius Hart, their Minor Child
v.
LALLIE KEMP CHARITY HOSPITAL, et al.
No. CA 86 0935.
Court of Appeal of Louisiana, First Circuit.
October 14, 1987.
Writ Denied December 11, 1987.
*616 Johnny S. McGary, Ponchatoula, for Thomas Pierre and Pauline Hart.
Tom Matheny, Hammond, for Lallie Kemp Charity Hosp., et al.
Before SHORTESS, LANIER and CRAIN, JJ.
LANIER, Judge.
This is a suit for damages in tort alleging the wrongful death of Demetrius Hart, a ten (10) year old child, due to medical malpractice. Petitioners in this suit are Thomas Pierre and Pauline Hart, the child's parents. Defendants are Lallie Kemp Charity Hospital (Hospital), the child's health care provider; the State of Louisiana (State); Doctors Robert Garrett and Nick Moustoukas, employees of the Hospital, as the child's surgeons and treating physicians; and Michael Aguado, a certified registered nurse anesthetist, the child's anesthetist, and also an employee of the Hospital. The trial court concluded that the plaintiffs had abandoned their rights as parents to recover more than a nominal amount of damages and that the plaintiffs were contributorily negligent in the amount of seventy-five percent in neglecting the child. Accordingly, the district court awarded damages in favor of the plaintiffs and against the Hospital and the State in the amount of $2,500 ($10,000 reduced by 75%) for Pierre and $2,500 for Hart, together with legal interest from date of judicial demand. Plaintiffs were ordered to pay seventy-five percent of the court costs. The plaintiffs appealed devolutively. The State and the Hospital appealed devolutively but only filed a brief as appellees and did not assign or brief asserted errors.

FACTS
Demetrius Hart was born on September 15, 1973. He was the illegitimate child of Thomas Pierre and Pauline Hart, who were both juveniles at the time of his birth. Since then, Demetrius has lived with and been cared for by Delia Hart, Pauline's mother. Delia Hart provided practically all of the financial support and assumed all parental responsibility for Demetrius. Pauline contributed no financial support to Demetrius, nor did Thomas Pierre, with the exception of approximately fifty dollars. Both Pauline and Thomas visited Demetrius occasionally, however.
On Saturday and Sunday, February 18 and 19, 1984, Pauline visited with Demetrius, who complained to her that he had a stomachache on both days. The following Monday, Demetrius also complained to Delia Hart of his stomach pains. On Tuesday, February 21, 1984, Demetrius was taken to the emergency room at the Hospital by Delia, still complaining of stomach pains and nausea.
Demetrius' illness was diagnosed as acute appendicitis with possible perforation, and preparations were immediately begun to prepare Demetrius for surgery, which required a reduction of the heart rate, preoperative antibiotics and resuscitation. This took nearly eight hours, and surgery was performed at seven o'clock a.m., the following day.
Demetrius had a history of vomiting prior to his surgery. A hospital orderly testified that Demetrius vomited on the way to his surgery. In spite of this, however, Michael Aguado, a nurse anesthetist, failed to apply cricoid pressure to Demetrius when administering the anesthetic until he completed intubating the trachea. During surgery, Demetrius vomited and aspirated the vomitus.[1] Dr. Garrett proceeded with, and completed, the operation, followed by a *617 cleaning of the trachea and lungs. Demetrius died soon after the operation due to the combined effect of sepsis (bacterial infection caused by the perforated appendix) and aspiration pneumonia. The trial court concluded that the anesthetist (Aguado) was negligent and the aspiration was a cause-in-fact of death.

CONTRIBUTORY NEGLIGENCE

(Assignment of Error Number 1)
Plaintiffs contend the trial court erred in assessing any contributory negligence to them because the defendants' answer was in the form of a general denial and failed to allege any affirmative defenses. Plaintiffs also contend that the finding of seventy-five percent contributory negligence was manifestly erroneous.
Contributory negligence is an affirmative defense which must be specially pleaded. See La.C.C.P. art. 1005; Marshall v. Beno Truck Equipment, Inc., 481 So.2d 1022 (La.App. 1st Cir.1985), writ denied, 482 So.2d 620 (La.1986). Nevertheless, pleadings may be enlarged to include an affirmative defense not specifically pleaded where evidence supporting such a defense is introduced without objection. La.C.C.P. art. 1154; Sanders v. New Orleans Public Service, Inc., 422 So.2d 232 (La.App. 4th Cir. 1982). Plaintiffs' attorney did not object to any evidence of contributory negligence during the trial, and the pleadings could be enlarged by any such testimony. The only testimony pertaining to alleged contributory negligence was that Pauline Hart knew that Demetrius had stomach pains three days prior to the date he was brought to the Hospital by his grandmother. The record contains no expert medical testimony or other evidence which tends to show contributory negligence by Pauline Hart or Thomas Pierre.
The defendant bears the burden of proving contributory negligence by a preponderance of the evidence. Wilkinson v. Hartford Accident and Indemnity Company, 411 So.2d 22 (La.1982). The defendant in this case has not met this burden of proof, and the factual finding of contributory negligence by the trial court was manifestly erroneous.
This assignment of error has merit.

QUANTUM

(Assignments of Error Numbers 2, 3 and 4)
Plaintiffs contend in assignment of error 2 that the trial court erred in refusing to recognize "loss of chance of survival" as an element of damages. Plaintiffs contend in assignments of error 3 and 4 that the trial court erred in refusing to award damages for the child's pain and suffering and abused its much discretion in awarding only nominal damages for the wrongful death of a minor child. In his oral reasons for judgment, the trial judge stated that the award would be a lump sum consisting of "loss of love and affection, companionship and society, pain and suffering and mental anguish."
In Owens v. Martin, 430 So.2d 1248, 1250 (La.App. 1st Cir.1983), affirmed, 449 So.2d 448 (La.1984), appears the following:
La.C.C. art. 2315 grants to designated beneficiaries the right to recover from a tort-feasor such damages as the beneficiaries have suffered if a person dies as a result of a tort. This cause of action is ordinarily called the `wrongful death action'. The wrongful death action does not arise until the injured person dies. The wrongful death action is intended to compensate the beneficiaries for compensable injuries suffered from the moment of death and thereafter. Guidry v. Theriot, 377 So.2d 319, 322 (La.1979).
The elements of damage for wrongful death are loss of love and affection, loss of services, loss of support, medical expenses and funeral expenses. Argus v. Scheppegrell, 489 So.2d 392 (La.App. 5th Cir.1986), writ denied, 494 So.2d 331 (La.1986); Roundtree v. Technical Welding and Fabrication Company, Inc., 364 So.2d 1325 (La.App. 4th Cir.1978), writ denied, 367 So.2d 389 (La.1979).
In Owens v. Martin, 430 So.2d at 1250, appears the following:

*618 La.C.C. art. 2315 also grants to designated beneficiaries a separate cause of action to recover the damages which a person suffered and would have been entitled to recover from a tortfeasor, if the person had lived. This is ordinarily called the `survival action'. This cause of action survives the death of the injured party and passes to the beneficiaries as an inheritable property right. The survival action comes into existence simultaneously with the commission of the tort and is transmitted to the beneficiaries upon the victim's death. The survival action permits recovery only for the damages suffered by the victim from the time of the injury to the moment of death. See Guidry, 377 So.2d at 322.
The elements of damage for the survival action are pain and suffering, loss of earnings and other damages sustained by the victim up to the moment of death. Roundtree, 364 So.2d at 1330.

Loss of Chance of Survival
Loss of chance of survival cannot be an element of damage in the wrongful death action because that cause of action is intended to compensate the decedent's beneficiaries for their compensable injuries after the moment of death. In 1984,[2] La.C. C. art. 2315 provided, in pertinent part, that the beneficiaries of the wrongful death action could "recover the damages which they sustained through the wrongful death of the deceased." (Emphasis added.) See also F. Stone, 12 Louisiana Civil Law Treatise, Tort Doctrine § 26, pp. 29-32 (1977). Therefore, if loss of chance of survival is a compensable element of damage, it must exist under the survival action, or it is not recoverable.
Pertinent portions of the history of the survival action are set forth in F. Stone, 12 Louisiana Civil Law Treatise, Tort Doctrine § 65, pp. 96-97 (1977), as follows:
Early opinion in Louisiana and elsewhere was that delictual actions were buried with the deceased and did not survive, being considered personal to the parties. Death was thought to clear the books of tort actions as well as of penal ones. However, by Act 223 of 1855, article 2294 (present article 2315) of the Civil Code was amended to provide for the survival of tort actions. The amended portion read `the right of this action shall survive in cases of death in favor of the minor children and widow of the deceased, or either of them, and in default of these in favor of the surviving father and mother or either of them, for the space of one year from the death.' This wording was repeated in the Revised Civil Code of 1870 as part of article 2315.
. . . .
Finally, in 1960 a comprehensive revision was made of article 2315 and it was correlated with articles 427 and 428 of the Code of Civil Procedure, the latter Code having gone into effect in that year. [Footnotes omitted.]
From 1960 to 1986[3], the La.C.C. art. 2315 provision on the survival action provided that "[t]he right to recover all other damages caused by an offense or quasi offense, if the injured person dies, shall survive for a period of one year from the death of the deceased in favor of ..." certain designated survivors.
In Vredenburg v. Behan, 33 La.Ann. 627, 642-643 (La.1881), the court discussed whether loss of life was an element of damage under the survival action of Act 223 of 1855, as follows:
There is, however, one grave error shown by the record, and to the prejudice of the defendants, and which, doubtless, had an important bearing on the verdict of the jury, which must be corrected.
It is this: that in his charge to the jury the judge a quo announced `that damages can be claimed by the heirs of the deceased for the loss of his life,' to which the defendants' counsel reserved a bill. This was clearly erroneous, as shown by *619 frequent adjudications of this Court, which, in effect declare `that an action for damages caused by the killing of a human being cannot be maintained.' Hubgh vs. N.O. & Carrollton R.R. Company, 6 An. 495 [54 Am.Dec. 565]. Earhart vs. Carrollton R.R. Co., 17 An. 244. Frank vs. Same [Carrollton R.R. Co.], 20 An. 26. McCubbin vs. Hastings, 27 An. 716.

The act of 1855, amending article 2315 C.C., expressly limits such right in favor of the widows and minor heirs to the right of action which the deceased would have had, had he survived the injury, and it cannot be extended beyond this. [Emphasis added.]
The 1960 amendment to the La.C.C. art. 2315 language establishing the survival action provided for the right to recover all other damages (except property damages). The 1960 explanatory note for this amendment by Henry G. McMahon indicates that five changes in the law were intended by the amendment; however, an intent to change the holding of Vredenburg v. Behan was not one of them. See West's LSA Vol. 8A p. 102. After the 1960 amendment to the survival action, this court observed in Chausse v. Southland Corporation, 400 So.2d 1199, 1203-1204 (La.App. 1st Cir. 1981), writs denied, 404 So.2d 278 (La. 1981), 404 So.2d 497 (La.1981) and 404 So. 2d 498 (La.1981), as follows:
Amelia Jo LaSalle, natural mother of Ramona Chausse, claims damages for Ramona's physical and mental pain and suffering prior to her death, Ramona's loss of enjoyment of future life and her own grief and loss due to Ramona's death.
There is no basis for a survival action for damages for pain and suffering experienced by a deceased person unless the decedent was conscious following the injury.... The evidence is inconclusive that Ramona was conscious at the scene of the accident. She was unconscious upon arrival at the emergency room and remained in a comatose state until her death six days later. For this reason, damages for her pain and suffering are denied. Our law does not recognize as compensable the loss of enjoyment of future life. [Emphasis added.]
The plaintiffs have cited no Louisiana jurisprudence to us, and we have found none, which authorizes a recovery of damages for loss of chance of survival in a survival action under Louisiana law. In view of the legislative history of the survival action and the jurisprudence interpreting it, we conclude that loss of chance of survival is not recoverable as an element of damage under the survival action in Louisiana.
Assignment of error number 2 is without merit.

The Child's Pain and Suffering Under the Survival Action
Plaintiffs contend that "[i]t can be assumed that the child suffered greatly from the time of aspiration, throughout the transfer and up until his death." It is hornbook law that a plaintiff bears the burden of proving the facts which support a damage award by a preponderance of the evidence. Proof of damages for the child's pain and suffering due to the aspiration of the vomitus cannot be assumed. A trial court is within its much discretion in awarding damages for pain and suffering where there is the smallest amount of evidence of pain on the part of the deceased by his actions or otherwise. Anthony v. Hospital Service District No. 1, 477 So.2d 1180, 1185 (La.App. 1st Cir.1985), writ denied, 480 So.2d 743 (La.1986). However, where there is no indication that a decedent consciously suffered, an award for pre-death pain and suffering should be denied. Meche v. Gulf States Utilities Company, 444 So.2d 137, 140 (La.App. 3rd Cir.1983). The record herein contains no evidence that Demetrius experienced any pain and suffering as a result of the aspiration. Therefore, plaintiffs were not entitled to any award for this element of Demetrius' pain and suffering.[4] No damages can be awarded for the pain and suffering associated with the appendectomy because it was *620 not caused by the negligence of any defendant.
Assignment of error number 3 is without merit.

Wrongful Death Damages
The trial judge concluded that the plaintiffs were only entitled to a nominal amount of damages for loss of love and affection because of their failure to fulfill their parental responsibility of financial support, tutorship, welfare and medical assistance, as well as leaving the child to be raised by his grandmother. The court found as fact that the amount of love and affection herein was not that of a normal parent-child relationship. In Cathey v. Bernard, 467 So.2d 9 (La.App. 1st Cir. 1985), this court held that $5,000 awarded to a mother was adequate compensation for the wrongful death of her six year old child, where the child had been in a foster home, and not the mother's custody, since she was three years old. In Chausse, 400 So.2d at 1204, this court held that $5,000 was just compensation for the mother of a thirteen year old girl killed in an automobile accident because the mother had relinquished custody of the child seven years prior to the accident, and the mother communicated with the child infrequently through phone calls and letters.
The trial court was correct in awarding to the plaintiffs a reduced amount of damages for loss of love, affection and companionship based on the facts of record. An award of $10,000 to each parent, under the facts and circumstances of this case, is not a clear abuse of the trial court's much discretion.
These assignments of error are without merit.

COURT INTERROGATION OF WITNESSES

(Assignment of Error Number 5)
Plaintiffs contend the trial judge abused his discretion in questioning some witnesses and "gave an appearance of over-involvement such that it appeared to be molding or shaping the record for the defendants."
The extent to which a trial judge may appropriately and reasonably interrogate witnesses is largely in the sound discretion of the trial judge. Martin v. Cotton's Pest Aid Control of Baton Rouge, Inc., 424 So.2d 1216 (La.App.1st Cir.1982). In the instant case, as in Martin, the interrogation of the witnesses was necessary to the administration of justice in developing the truth.
This assignment of error is without merit.

NEGLIGENCE OF DRS. GARRETT AND MOUSTOUKAS

(Assignment of Error Number 6)
Plaintiffs contend the trial court erred in "dismissing Dr. Garrett and Dr. Moustoukas from this case and finding them free of negligence."
Plaintiffs allege that Michael Aguado was under the exclusive responsibility and control of Drs. Garrett and Moustoukas, thereby making the doctors liable for Aguado's negligence under the doctrine of respondeat superior.
For respondeat superior to be applicable, there must be an employer-employee contractual relationship. Pursuant to La. C.C. art. 176, an employer (master) is vicariously liable for the torts of his employee (servant) as provided in La.C.C. art. 2320. Pursuant to La.C.C. art. 2320, an employer (master) is liable for the torts of his employee (servant) only when he might have prevented the act which caused the damage and did not do so. In interpreting this code article, our jurisprudence has borrowed from the concepts of respondeat superior and the independent contractor in the common *621 law. Comment, The Employer and the Torts of his Independent Contractor in Louisiana, 21 Tul.L.Rev. 619 (1947). The essential elements of an employment contract are (1) mutual consent, (2) giving of services (labor), and a fixed price (wages). La.C.C. arts. 163, 164, 2669, 2670 and 2673; Vining v. Bardwell, 482 So.2d 685 (La.App. 1st Cir.1985), writ denied, 487 So.2d 439 (La.1986). The evidence shows Aguado was an employee of the Hospital, not Drs. Garrett and Moustoukas. Since Aguado was not an employee of Drs. Garrett and Moustoukas, respondeat superior is not applicable. Galloway v. Ioppolo, 464 So.2d 386 (La.App. 1st Cir.1985).
Further, a review of the record reveals that Aguado was not even under the control of Drs. Garrett and Moustoukas. The transcript reads, in pertinent part, as follows:
BY THE COURT:
Who did you look to as the captain of the ship within the operating room as far as anethesia [sic]?
BY MR. AGUADO:
That'swell as far as anesthesia I'd be, you know, I was pretty much it or whoever else was around. If there was anything that was really complicated, I would usually try to call someone before a case to sort of consult with them and discuss a plan to, you know, and it was usually somebody not affiliated with the hospital. You know, as far as the anesthetic is concerned, I think I wasI probably had the most knowledge.
Plaintiffs also allege that "although the correct diagnosis was made within thirty minutes of the child's arrival, surgery was delayed over seven hours."
Demetrius was admitted to the hospital at about 11:30 p.m. on February 21, 1984. Dr. Garrett first saw him at about 2:30 a.m. on February 22, 1984. The delay in surgery until 7:00 that morning was explained by Dr. Garrett as follows:
A. Well, I mentioned previously, uh, when someone comes in like that with the problem that he had, appendicitis, history of anorexia, not eating and vomiting, they're significantly dehydrated. Also, they require antibiotics being on board prior to the surgery which helps as well. So this time period was used in an effort to help re-establish some of the fluids in his body, in other words, resuscitate him. I get the antibiotics on board in hope of getting his overall status slightly improved compared to what it was then.
Q. Would it be dangerous to proceed without the hydration of the child?
A. Uh, it would beit's definitely in thebetter to have the patient resuscitated. If you don't, you run a greater risk of problems with kidneys, with lungs, etc., heart. So it's much better to resuscitate.
Dr. Garrett also testified that preoperative resuscitation can take as long as twelve hours in some cases, and Demetrius required "several hours of fluid resuscitation and antibiotics prior to his surgery."
In view of this testimony, which apparently was accepted by the trial court, we cannot say that the trial court was manifestly erroneous in finding Drs. Garrett and Moustoukas free from negligence.
This assignment of error is without merit.

COURT COSTS

(Assignment of Error Number 7)
Plaintiffs contend the trial court erred in assessing them with seventy-five percent of the costs of the proceedings.
This assessment of costs was based upon the trial court's finding of seventy-five percent contributory negligence by the plaintiffs. Because we conclude that this finding of contributory negligence is manifestly erroneous, we also set aside the trial court's assessment of costs and assess all costs of the trial court and this court to the State and the Hospital.
This assignment of error has merit.

DECREE
For the foregoing reasons, the judgment of the trial court is amended to render judgment in favor of the plaintiffs, Thomas Pierre and Pauline Hart, and against the *622 defendants, Lallie Kemp Charity Hospital and the State of Louisiana, in the amount of Ten Thousand and No/100 ($10,000.00) Dollars for Thomas Pierre and Ten Thousand and No/100 ($10,000.00) Dollars for Pauline Hart, together with legal interest from date of judicial demand on each amount. The State and the Hospital are cast for all costs in the amount of $4,151.31.
REVERSED IN PART; AMENDED AND AFFIRMED IN PART.
SHORTESS, J., concurs in part and dissents in part with reasons.
SHORTESS, Judge, concurring in part, dissenting in part.
I concur with the majority's opinion in all respects except its treatment of assignment of error number six (negligence of Dr. Garrett and Moustoukas). The surgeon is in charge of the operating room, not the nurse anesthetist.
I respectfully concur in part and dissent in part.
NOTES
[1] Aspiration is the taking of foreign matter into the lungs with the respiratory current. The foreign matter in this case, the vomitus, contained stomach acids which burned the lungs and interfered with the supply of oxygen to the body.
[2] By Act 211 of 1986, the wrongful death action was amended and reenacted as La.C.C. art. 2315.2.
[3] By Act 211 of 1986, the survival action was amended and reenacted as La.C.C. art. 2315.1.
[4] A complete reading of the trial judge's reasons for judgment indicates the trial judge focused his attention on loss of love, affection and companionship as reflected by the following:

As I said earlier, I do not think they are entitled to more than a minimal amount. In this particular situation, because of the attitude they seemed to displayed publically toward the child's welfare, his medical services, his attention, the attention to him at the time of need, I find that Mr. Pierre suffered a loss valued at ten thousand dollars and I find that Pauline Hart suffered a loss valued at ten thousand dollars....