**William SIMMONS, et al.**

v.

**HARTFORD INSURANCE COMPANY, et al.**

**Civ. A. No. 91–757.**

United States District Court,
E.D. Louisiana.

Feb. 12, 1992.

damages, (4) Macey Simmons' pre-death pain and suffering, and (5) Macey Simmons' hedonic damages were heard this date on memoranda.

Defendants' motions for summary judgment on the issues of attorney's fees and Macey Simmons' pre-death pain and suffering are hereby GRANTED as UNOPPOSED. Defendants' motion for summary judgment on the issue of pre-impact fear by Casey Miley is DENIED as MOOT, as he is no longer a party in this matter.

For the reasons stated below, defendants' motion on William Simmons' emotional distress damages is DENIED and defendants' motion on Macey Simmons' hedonic damages is GRANTED.

## RELEVANT FACTS

This matter arises out of an auto accident which occurred on January 24, 1991, on Louisiana Highway 10 in Washington Parish, Louisiana. A vehicle being owned by defendant Syncor and operated by its employee, Cynthia Anderson, collided with a vehicle operated by Macey Simmons, the daughter of plaintiff William Simmons. Plaintiff Sharon Simmons and Casey Miley, the son of William Simmons, were passengers. Macey Simmons received fatal injuries and died at East Jefferson Hospital approximately six (6) hours after the accident.

Defendant Hartford Insurance was the uninsured motorist carrier for the vehicle owned by William Simmons and operated by Macey Simmons.

Although not at the accident scene when the collision occurred, Mr. Simmons apparently arrived there minutes after the accident. According to Mr. Simmons' deposition testimony, he heard about the accident when a passerby who saw the accident scene telephoned him as he was getting ready for work in the morning. He states that he immediately rushed to the scene, which was just minutes away, arriving less than fifteen minutes after the accident. He states that he arrived before any of the professionals responding to the accident. He stayed with Macey, in the car, until she

Rodney G. Penton, Bogalusa, La., for plaintiffs.

Jerald L. Album, New Orleans, La., for defendants.

## ORDER AND REASONS FOR RULING

CLEMENT, District Judge.

Defendants' motions for summary judgment to strike plaintiffs' claims for: (1) pre-impact fear by Casey Miley, (2) attorney's fees, (3) William Simmons' personal

was extricated with the "jaws of life." He rode in the ambulance with her to the medical center in Bogalusa but had to follow in the car right behind the ambulance when she was transferred to East Jefferson Hospital. When she arrived at the hospital, he stayed with her until forced to leave by hospital personnel.

According to plaintiffs' memorandum, Macey Simmons had a bright future ahead of her. She is described as an "outgoing, energetic young lady" who was very active in high school activities. She had a choice of cheerleading scholarships to Pearl River Jr. College and to the University of Southern Mississippi.

## PROCEDURAL NOTE

■ Plaintiff notes that defendants failed to comply with Uniform Local Rule 2.09, which requires that "every motion for summary judgment shall be accompanied by a separate, short and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried."

Plaintiffs are absolutely correct. However, as plaintiffs note, the summary judgment motions before the Court are more law-driven than fact-driven. In addition, for purposes of summary judgment, this court must construe every conceivable question of fact in a light most favorable to the non-mover. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). Consequently, in the interest of expediency, the Court will consider these motions now rather than require defendants to resubmit them in conformity with Rule 2.09.

## WILLIAM SIMMONS' EMOTIONAL DISTRESS

As both plaintiffs and defendants note, this question is controlled by *Lejeune v. Rayne Branch Hospital*, 556 So.2d 559 (La.1990).[1] In *Lejeune*, the Louisiana Supreme Court overturned *Black v. Carrollton R.R. Co.*, 10 La.Ann. 33 (1855), in hold-ing that a duty exists, under La.Civ.Code Ann. art. 2315, to protect a plaintiff from mental anguish damages occasioned by the negligent infliction of injury to a third person. 556 So.2d at 569.

The Court announced four criteria be met before one can receive damages for mental pain and anguish arising out of an injury to a third person:

1. A claimant need not be physically injured, nor suffer physical impact in the same accident in order to be awarded mental pain and anguish damages arising out of injury to another. Nor need he be in the zone of danger to which the directly injured party is exposed. He must, however, either view the accident or injury-causing event or come upon the accident scene soon thereafter and before substantial change has occurred in the victim's condition.

2. The direct victim of the traumatic injury must suffer such harm that it can reasonably be expected that one in the plaintiff's position would suffer serious mental anguish from the experience.

3. The emotional distress sustained must be both serious and reasonably foreseeable to allow recovery. Serious emotional distress, of course, goes well beyond simple pain and anguish. Compensation for mental pain and anguish over injury to a third person should only be allowed where the emotional injury is both severe and debilitating.

4. [The claimant and the direct victim must have a close relationship.]

*Id.* at 570.

In this case, there is no question that criterion # 2 is satisfied, as Macey Simmons clearly suffered such harm that it could be reasonably expected that one in Mr. Simmons' position would suffer serious mental anguish from the experience. Criterion # 4 is also clearly satisfied, as William Simmons is Macey's father. Criteria

---

1. In 1991, the Louisiana legislature enacted La. Civ.Code art. 2315.6, which essentially codifies the *Lejeune* holding. This provision does not apply to this matter, which arises out of an incident which occurred before its effective date.

#1 and #3 merit a more thorough analysis.

### 1. Proximity to the Event

Mr. Simmons did not view the accident. Thus, to recover under *Lejeune*, he must have "come upon the accident scene soon thereafter and before substantial change has occurred in the victim's condition."

Looking at the facts in a light most favorable to plaintiffs, a factfinder could certainly find that no "substantial change had occurred in" Macey Simmons' condition between the time of the accident and when her father arrived. At the time William Simmons arrived at the accident scene, Macey was still stuck in the driver's seat of the car, and no rescue personnel had arrived yet.

The question is whether William Simmons "came upon the accident scene soon thereafter" within the meaning of *Lejeune*. Defendants argue that, since Mr. Simmons heard about the accident by telephone and then went to the accident scene, he appeared "voluntarily" and did not "come upon" the scene as required by *Lejeune*.

This Court is not aware of any interpretation of the proximity language in *Lejeune* by a Louisiana court. Cases with similar facts heard by other states' courts may provide guidance here. However, this Court should only follow authority from states with proximity language like that in *Lejeune*.

■ In its discussion of how other states had addressed the question of proximity, the *Lejeune* court noted that

> Several other states ... allowed recovery based on the "sensory and contemporaneous observance" of the victim ... even if the plaintiff did not see the injury-causing event, but rather arrived on the scene just afterwards. These courts generally find that the shock is just as great upon viewing a victim immediately after the injury-causing event if *at* the scene and *before* any material change

has occurred in the victim's condition. See *Tommy's Elbow Room v. Kavorkian*, 727 P.2d 1038 (Alaska 1986); *James v. Lieb*, 221 Neb. 47, 375 N.W.2d 109 (1985); *Corso v. Merrill*, 119 N.H. 647, 406 A.2d 300 (1979); *General Motors v. Grizzle*, 642 S.W.2d 837 (Tex.App.— Waco, 1982); *Gates v. Richardson*, 719 P.2d 193 (Wyo.1986).

556 So.2d at 565. The statement that "these courts generally find that the shock is just as great upon viewing a victim immediately after the injury-causing event if *at* the scene and *before* any material change has occurred in the victim's condition" is essentially a description of the proximity standard pronounced in *Lejeune*. It can thus be inferred that the Louisiana Supreme Court approves of these holdings.

■ In three of the five cases, *Kavorkian*, *Grizzle* and *Gates*, the courts found that a parent who rushed to the scene of its child's accident could recover damages for negligent infliction of emotional distress. In the other two cases, *Corso* and *James*, the courts applied standards for recovery substantially different from those set forth in *Lejeune* and were incorrectly cited by the *Lejeune* court as allowing recovery by plaintiffs who initially perceive the victim after the accident.[2]

In *Kavorkian*, the plaintiff drove by an accident scene on the way to his house. When he arrived home and noticed his daughter was not there, he rushed to the accident scene and discovered that his daughter was involved in the accident. The Alaska Supreme Court held that his perception of the accident was sufficiently foreseeable and contemporaneous with the accident to permit recovery for his emotional distress. 727 P.2d at 1043.

In *Gates*, the plaintiff was told by her son that his brother had been involved in a bicycle accident. She immediately rushed to the scene of the accident. The Wyoming Supreme Court held that she could recover

---

**2.** In *Corso*, the New Hampshire Supreme Court permitted recovery only because the plaintiffs were able to hear their son's accident as it happened. The New Hampshire court held that such simultaneous perception of the accident was required. 406 A.2d at 306.

In *James*, the Nebraska Supreme Court also required simultaneous sensory perception of the accident. 375 N.W.2d at 115.

for her emotional distress from seeing her badly injured son at the accident scene. 719 P.2d at 201.

In *Grizzle*, the plaintiff was informed that her son had been in an auto accident. She rushed to the scene of the accident, arriving "moments" after the incident. A Texas court allowed her to recover for her emotional distress from her perception of the aftermath of the accident. 642 S.W.2d at 844.

Thus, three authorities cited in *Lejeune* found that the proximity requirement is satisfied where the parent, as in this case, rushes to the accident scene. Accordingly, the proximity requirement of *Lejeune* is satisfied here.

Finally, defendants assert that there is "the potential for a 'flood gate' of claims ... if anyone having a close relationship with an accident simply appears at an accident scene voluntarily in order to present a claim." This Court finds absurd the notion that close relatives will "voluntarily appear" at the side of their loved ones at accident scenes for the purpose of facilitating an emotional distress claim. Even courts opposed to recognizing this cause of action have acknowledged that the fear of fraudulent claims alone is an insufficient reason to deny all such claims. *See Tobin v. Grossman*, 24 N.Y.2d 609, 249 N.E.2d 419, 301 N.Y.S.2d 554 (1969).

### 2. Severity of the Distress

"Compensation for mental pain and anguish over injury to a third person should only be allowed where the emotional injury is both severe and debilitating." *Lejeune, supra*, 556 So.2d at 570.

■ For purposes of this action, the Court need not address whether Mr. Simmons experienced such distress from the entire experience surrounding his daughter's death. Instead, our focus is on whether he experienced severe and debilitating distress specifically from "the shock caused by the perception of the especially horrendous event." *Id.*, 556 So.2d at 570 n. 11 (citing *Gates, supra*). That is, did Mr. Simmons suffer severe and debilitating distress solely as a result of his initial perception of the aftermath of the accident?

■ It follows that "the claimant must realize, at the time he witnesses the event, that the injuries are serious." *Gates, supra*, 719 P.2d at 199. *See Corso, supra*, 406 A.2d at 307; *Justus v. Atchison*, 19 Cal.3d 564, 139 Cal.Rptr. 97, 110–11, 565 P.2d 122, 135–36 (1977); Comment, *Dillon Revisited*, 43 Ohio State L.Rev. 931, 948 (1982). Otherwise, the distress would not arise from the perception of the event but rather from being told of the seriousness of the event at some future time.

Defendants note that Mr. Simmons did not accurately perceive the severity of his daughter's injuries when he arrived at the accident scene. He stated that he

> knew she was hurt and all, but I thought she was going to be okay. I didn't know it was this serious.

Simmons deposition, p. 16. Matthew Lang, a witness, testified that Mr. Simmons "wasn't out of control" at the accident scene. Lang deposition, p. 18. Mr. Simmons discovered the seriousness of the injuries about 2½ hours after the accident, at the medical center in Bogalusa:

> Dr. Hartman walked out and told me, you know, that she was injured very badly and if we didn't get her somewhere soon that she was going to die. That's the first time that the seriousness of this thing really caught up with me. I had no idea that she was injured that bad.

Simmons deposition, p. 19.

However, the deposition testimony of Kenneth Capritto, a witness, indicates that Mr. Simmons was affected by what he saw at the accident scene:

> Q: Did you observe the way he was acting and how he appeared to you? Can you describe that for me?
>
> A: I don't know how to put it, I guess very upset, for one thing ... He was crying, and he got in the car. He was saying "Can you hear me? I'm right here for you. I'm going to get you out." He appeared to have lots of adrenalin.

Capritto deposition, pp. 26–27. Thus, there is evidence that Mr. Simmons experienced distress at the accident scene.

Although it appears, at this time, that a preponderance of the evidence favors defendants' position on this issue, this is not the appropriate inquiry for the court. On a motion for summary judgment, the question is whether "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Washington v. Allstate Ins. Co.*, 901 F.2d 1281, 1286 *reh'g den.* (5th Cir.1990) (citing *Matsushita Electric Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986)). In this analysis, the "evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson, supra*, 477 U.S. at 255, 106 S.Ct. at 2513.

"Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id.* It follows that "trial courts should not act other than with caution in granting summary judgment" and that the trial court may "deny summary judgment in a case where there is reason to believe that the better course would be to proceed to a full trial." *Id.*

■ This is one issue for which the better course would be to proceed to trial. Although Mr. Simmons' testimony indicates that he did not know that his daughter's injuries were as serious as they turned out to be, this does not by itself mean that he did not know that the injuries were serious. Mr. Capritto's deposition does indicate that Mr. Simmons was "upset" and "crying." Thus, reasonable jurors could draw conflicting inferences about the degree of distress that Mr. Simmons suffered at the accident scene.

Furthermore, neither party has presented much evidence in support of or in opposition to this motion. In this light, it would be inappropriate to grant summary judgment.

### MACEY SIMMONS' HEDONIC DAMAGES

Plaintiffs argue that Macey Simmons' parents should be able to recover for Macey's loss of enjoyment of future life or "hedonic damages" as a result of her death.

There are two provisions in Louisiana's Civil Code that may be relevant to this issue. The first is the "survival statute," La.Civ.Code Ann. art. 2315.1 (1986). The second is the "wrongful death" statute, La.Civ.Code Ann. art. 2315.2 (1986).

#### 1. The Survival Statute

■ The survival statute, in pertinent part, provides:

A. If a person who has been injured by an offense or quasi-offense dies, the right to recover all damages for injury to that person, his property or otherwise, caused by the offense or quasi-offense, shall survive for a period of one year from the death of the deceased in favor of ...

(2) The surviving mother and father of the deceased, or either of them if he left no spouse or child surviving ...

La.Civ.Code Ann. art. 2315.1. One commentator, a supporter of hedonic damages, has recently discussed the relationship between survival statutes and hedonic damages:

Survival statutes provide for the continuation of the decedent's claims after death, and hence, superficially appear to provide a basis for recovering damages for loss of life on the decedent's behalf. Survival actions, however, are not based upon the decedent's death, and survival statutes do not create any new claim arising from the event of death. They merely keep the preexisting injury claim alive after death as an asset of the decedent's estate, and limit damages to those that occurred from the time of injury until death.

Hedonic damage claims do not fit within this statutory scheme because they are predicated upon the death itself: the decedent's estate seeks damages for the harm inflicted by death—the loss of life. Survival statutes merely authorize the damages to which the decedent would have been entitled had he lived. Had he

lived, however, the decedent would have had no claim for lost life. Accordingly, lost-life damages are unavailable under true survival statutes.

McClurg, "It's a Wonderful Life: The Case for Hedonic Damages in Wrongful Death Cases," 66 Notre Dame L.Rev. 57, 91 (1990) (citations omitted).

This Court is only aware of one Louisiana Supreme Court case on point. Although it is an 1881 case, the Court's analysis is remarkably similar to that of the commentator above. In *Vredenberg v. Behan*, 33 La.Ann. 627 (La.1881), the Louisiana Supreme Court held that heirs of the decedent could not recover damages for the decedent's loss of future life under the Louisiana survival statute.[3] 33 La.Ann. at 642–43. The Court reasoned that art. 2315 only provided the close relatives of the deceased with "the right of action which the deceased would have had, had he survived the injury, and it cannot be extended" to damages caused by the decedent's death. *Id.* at 643.

There are two modern lower court cases, both heard by the Louisiana First Circuit, that support this holding. In *Chausse v. Southland Corp.*, 400 So.2d 1199 (La.App. 1st Cir.1981), the court held that the parents of the deceased minor could not recover damages from the tortfeasor for their daughter's loss of enjoyment of future life. *Id.* at 1204. The court provided no analysis, and simply concluded that "[o]ur law does not recognize as compensable the loss of enjoyment of future life." *Id.*

In *Pierre v. Lallie Kemp Charity Hosp.*, 515 So.2d 614 (La.App. 1st Cir.1987), the court held that the parents of a minor who died as a result of medical malpractice could not recover for their child's loss of life. *Id.* at 618–19. The court conducted a thorough analysis of *Vredenburg* and the

history of art. 2315, and reached the same conclusion it had in *Chausse, supra:*

> The plaintiffs have cited no Louisiana jurisprudence to us, and we have found none, which authorizes a recovery of damages for loss of chance of survival in a survival action under Louisiana law. In view of the legislative history of the survival action and the jurisprudence interpreting it, we conclude that loss of chance of survival is not recoverable as an element of damage under the survival action in Louisiana.

*Id.* at 619.

■ When adjudicating claims for which state law provides the rules of decision, we are bound to apply the law as interpreted by the state's highest court. *Ladue v. Chevron, U.S.A., Inc.*, 920 F.2d 272, 274 (5th Cir.1991). In this case, the Louisiana Supreme Court has spoken, albeit over one hundred years ago. Since the Louisiana Court has spoken, this Court need not speculate as to whether it might rule differently today.

#### 2. The Wrongful Death Statute

The Louisiana wrongful death statute provides, in pertinent part:

> A. If a person dies due to the fault of another, suit may be brought by the following persons to recover damages which they sustained as a result of the death ...
>
> (2) The surviving mother and father of the deceased, or either of them if he left no spouse or child surviving ...

La.Civ.Code Ann. art. 2315.2 (1986).

■ Wrongful death statutes differ from survival statutes conceptually. Whereas survival statutes give the survivors the right to proceed with actions that the decedent would have had, wrongful death statutes provide for the recovery of

---

3. Prior to 1986, the subject matter of art. 2315.1 "was contained generally in C.C. art. 2315." La. Civ.Code Ann. art. 2315.1, Historical and Statutory Notes.

In the Revised Civil Code of 1870, La.Civ.Code art. 2315 read as follows:

Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it; the right of this action

shall survive in case of death in favor of the minor children and widow of the deceased or either of them, and in default of these in favor of the surviving father and mother or either of them, for the space of one year from the death.

This survival language in this statute contains essentially the same language as modern art. 2315.1.

damages that the survivors suffered personally as a result of the decedent's death. McClurg, *supra,* 66 Notre Dame L.Rev. at 93.

■ This Court is only aware of one state, Connecticut, that has construed its death remedy to allow compensation for hedonic damages. *Katsetos v. Nolan,* 170 Conn. 637, 368 A.2d 172, 183 (1976). *See* McClurg, *supra,* 66 Notre Dame Law Rev. at 95; Note, "Hedonic Damages for Wrongful Death: Are Tortfeasors Getting Away with Murder?," 78 Geo.L.J. 1687, 1693 (1990). In addition, the Seventh Circuit and a few federal district courts have allowed hedonic damages in death cases under 42 U.S.C. § 1983. *Sherrod v. Berry,* 827 F.2d 195 (7th Cir.1987), *rehearing on other grounds,* 856 F.2d 802 (7th Cir.1988) (en banc); *Heath v. City of Hialeah,* 560 F.Supp. 840, 841 (S.D.Fla.1983). Thus, the concept of allowing hedonic damages in wrongful death cases is far from widely accepted.

It is well-settled under Louisiana law that the elements of damage that can be claimed in a wrongful death action are loss of love and affection, loss of services, loss of support, medical expenses and funeral expenses. *See, e.g., Archie v. Board of Supervisors of Louisiana State University,* 543 So.2d 1348, 1353 (La.App. 1st Cir. 1989); *Domangue v. Eastern Airlines, Inc.,* 542 F.Supp. 643, 646 (E.D.La.1982). This is consistent with the plain language of art. 2315.2, which allows the survivors to recover "damages which *they* sustained as a result of the [decedent's] death."

The Louisiana Supreme Court has never explicitly said that hedonic damages are not allowed in wrongful death cases. However, in the *Pierre* case, *supra,* the Louisiana First Circuit interpreted the above statutory language [4] as precluding recovery of hedonic damages under the wrongful death statute. 515 So.2d at 618. This is consistent with the prevailing view, that wrongful death statutes were meant to compensate the survivors for their losses, not for the decedent's losses.

It would be unjustifiable for this Court to suggest that the Louisiana Supreme Court would approve of hedonic damages in wrongful death actions when (1) no Louisiana court has ever allowed it, and (2) it would contradict the plain meaning of the statute. Defendants' summary judgment motion on this issue must be granted.

## CONCLUSION

For the reasons stated above,

IT IS ORDERED that defendants' motion for summary judgment on the issue of William Simmons' emotional distress is DENIED, and defendants' motion for summary judgment on the issue of Macey Simmons' hedonic damages is GRANTED.

---

**4.** The court was interpreting art. 2315 as it read in 1984. At that time, it provided, like the current art. 2315.2, "that the beneficiaries of the wrongful death action could 'recover the damages which *they* sustained through the wrongful death of the deceased.' (Emphasis added.)" *Id.*