Rockingham
No. 78-271

VINCENT CORSO, LOLITA CORSO, & a.

v.

STEPHEN E. MERRILL, ADMINISTRATOR,
ESTATE OF STRELLA HILTON

August 20, 1979

*James A. Connor*, of Manchester, and *George C. Eliades, Jr.*, of Massachusetts (*Mr. Connor* orally), for the plaintiffs.

*Sulloway, Hollis, Godfrey & Soden*, of Concord (*Ronald C. Anderson* orally), for the defendant.

LAMPRON, C.J.   This interlocutory appeal requires us to examine the question whether parents who perceive through their senses the fact that their child has been seriously injured and immediately observe the child at the accident scene can recover for emotional distress. We have previously denied recovery to parental bystanders. *Jelley v. LaFlame*, 108 N.II. 471, 238 A.2d 728 (1968). Nevertheless, recent judicial opinions and legal commentaries have convinced us to review critically the reasons we have previously given for denying recovery. For the reasons stated below we abandon our present rule, sustain plaintiffs' exceptions. and remand this case for trial.

Plaintiffs' writs allege that the defendant, Strella Hilton, was driving her car in a westerly direction on Hampstead Road in Derry on September 27, 1976, when she negligently struck Katherine Corso, age eight, the daughter of Vincent and Lolita Corso. The Corso house was approximately fifty feet from the scene of the accident. Lolita Corso was in her kitchen at the time of the accident and she heard a "terrible thud" outside the house. After hearing this sound, she looked out the kitchen door and saw her daughter lying seriously injured in the street in front of the house. Vincent Corso was also in the kitchen when he heard his wife scream that Katherine had been hit by a car. He immediately ran out the door and observed his daughter lying in the street. As a result of this accident, Katherine has been permanently crippled.

Counts one and two of the original writ seek recovery for the injuries sustained by Katherine and are not in issue in this appeal. Count three of the amended writ seeks recovery for Lolita Corso for negligent infliction of emotional distress incident to her hearing the accident and immediately observing her daughter lying injured at the accident scene. Count four of the amended writ seeks recovery for Vincent Corso for negligent infliction of emotional distress incident to being a percipient witness of the accident; that is, he contemporaneously observed the immediate consequences of defendant's alleged negligent act. Counts three and four were dismissed by the trial court for failing to state a cause of action for which relief can be granted. The plaintiffs seasonably excepted and a reserved case was prepared and transferred to this court by *King*, J.

In *Jelley v. LaFlame*, 108 N.H. 471, 238 A.2d 728 (1968), this court was presented with facts similar to those of the present case. A mother had witnessed an accident in which her six-year-old daughter was crushed to death by a truck. She brought an action for negligent infliction of emotional distress to recover for the physical harm resulting from fright and shock caused when she witnessed the accident. We denied recovery holding that no duty existed from the defendant to the plaintiff because the plaintiff was not in the zone of danger, and that public policy compelled us to construct a legal barrier to deny liability. *Id.*; *Barber v. Pollock*, 104 N.H. 379, 187 A.2d 788 (1963); *see Phipps v. McCabe*, 116 N.H. 475, 362 A.2d 186 (1976); *Deem v. Town of Newmarket*, 115 N.H. 84, 333 A.2d 446 (1975).

The majority of States allow bystander recovery for emotional distress only when the bystander is within the physical zone of danger from defendant's activity. *But see* Comment, *The Development of Recovery for Negligently Inflicted Mental Distress Arising from Peril or Injury to Another: An Analysis of the American and Australian Approaches*, 26 EMORY L.J. 647 (1977) (Australia has abandoned the zone of danger approach). *See generally* Annot., 29 A.L.R.3d 1337 (1970). Nevertheless, there appears to be "[s]ome tendency toward allowing recovery," for those persons who are not within the zone. *Dziokonski v. Babineau*, 380 N.E.2d 1295, 1300 (Mass. 1978). At the present time, the highest courts of five States and intermediate courts of appeals in two other States allow recovery in instances such as are alleged in the present case. *Dillon v. Legg*, 68 Cal. 2d 728, 441 P.2d 912, 69 Cal. Rptr. 72 (1968); *Leong v. Takasaki*, 55 Haw. 398, 520 P.2d 758 (1974); *Dziokonski v. Babineau*, 380 N.E.2d 1295 (Mass. 1978); *Sinn v. Burd*, 48 U.S.L.W. 2080 (Pa. Sup. Ct. 7-31-79); *D'Ambra v. United States*, 114 R.I. 643, 338 A.2d 524 (1975); *Toms v. McConnell*, 45 Mich.

App. 647, 207 N.W.2d 140 (1973); *Landreth v. Reed*, 570 S.W.2d 486 (Tex. Civ. App. 1978); *see Prince v. Pittston Co.*, 63 F.R.D. 28 (S.D. W. Va. 1974); *Hunsley v. Giard*, 87 Wash. 2d 424, 553 P.2d 1096 (1976). Recovery for bystanders not in the zone of danger has also been supported by a substantial number of major textwriters and commentators, 1 J. DOOLEY, MODERN TORT LAW, §§ 15.10–15.12 (1977); 2 F. HARPER & F. JAMES, THE LAW OF TORTS, § 18.4 (1956); W. PROSSER, LAW OF TORTS, § 54 (4th ed. 1971). *See also* Lambert, *Tort Liability for Psychic Injuries: Overview and Update*, 37 ATLA L.J. 1, 11–16 (1978).

Most courts that permit a cause of action for negligent infliction of emotional distress to bystanders do so by rejecting the zone of danger approach and instead apply traditional principles of negligence analysis. *Dillon v. Legg supra*; *Leong v. Takasaki supra*; *Dziokonski v. Babineau supra*; *Toms v. McConnell supra*. *See generally* Comment, *Negligence and the Infliction of Emotional Harm: A Reappraisal of the Nervous Shock Cases*, 35 U. CHI. L. REV. 512 (1968) (hereinafter cited as *Reappraisal of Nervous Shock*). These courts have avoided imposing undue liability by using a test of foreseeability. We feel compelled to reexamine the issue of bystander recovery for infliction of emotional distress. We must consider whether a simple negligence analysis would better serve the interests of justice than the current zone of danger rule, which automatically bars recovery regardless of the relation of the victim to the plaintiff, the proximity of the plaintiff to the scene of the accident, or the fact that the plaintiff's emotional injury directly results from the shock of seeing or otherwise sensorially perceiving the accident and immediately viewing the accident victim.

■ The key to applying a traditional negligence approach is the doctrine of foreseeability. Duty and foreseeability are inextricably bound together. "The risk reasonably to be perceived defines the duty to be obeyed." *Palsgraf v. Long Island R.R.*, 248 N.Y. 339, 344, 162 N.E. 99, 100 (1928). A person may be liable "only to those who are foreseeably endangered by [his] conduct and only with respect to those risks or hazards whose likelihood made the conduct unreasonably dangerous." 2 F. HARPER & F. JAMES, THE LAW OF TORTS § 18.2, at 1018 (1956). His duty is "measured by the scope of the risk which negligent conduct foreseeably entails." *Id*.

The manner in which foreseeability is defined will determine whether a duty exists; to simply conclude that no duty exists, as we have done in the past, "begs the essential question—whether the plaintiffs' interests are entitled to legal protection against the defendant's conduct." W. PROSSER, LAW OF TORTS § 53, at 325 (4th ed. 1971).

> [I]f the question is posed, is it foreseeable that a negligent driver will injure a child, that the child's mother will be nearby, and that the mother will suffer mental distress, the answer must be no in the vast majority of cases. This negative answer is primarily due to the fact that it has been required that the defendant foresee the injury of a precise type of person—a child. But if the courts concentrate solely on the plaintiff and defendant while considering the third party only as an instrument or means by which the harm was done, it may then be said that the plaintiff is foreseeable. The question then is whether it is foreseeable that negligence to one person may cause mental distress to another.

Comment, *One Step Beyond the Zone of Danger Limitation Upon Recovery for the Negligent Infliction of Mental Distress*, 43 TEMP. L.Q. 59, 62 (1969) (hereinafter cited as *One Step Beyond*).

The broader inquiry of foreseeability is therefore more appropriate in determining whether a duty exists. 1 J. DOOLEY, *supra* § 15.10, at 326. 2 F. HARPER & F. JAMES, *supra* § 18.4, at 1038–39. "[I]t is clear that it is reasonably foreseeable that, if one negligently operates a motor vehicle so as to injure a person, there will be one or more persons sufficiently attached emotionally to the injured person that he or they will be affected." *Dziokonski v. Babineau*, 380 N.E.2d at 1302 (Mass. 1978); *accord, Dillon v. Legg supra*; *Leong v. Takasaki supra*. *See generally* W. PROSSER, *supra* § 54, at 334.

■ Moreover, freedom from mental distress is an interest that is today worthy of legal protection. One commentator has stated:

> In our increasingly complex society, the orderly and normal functioning of a man's mind is as critical to his well-being as physical health. Indeed, a sound mind within a disabled body can accomplish much, while a disabled mind in the soundest of bodies is rarely capable of making any substantial contribution to society.

Comment, *Negligently Inflicted Mental Distress: The Case for an Independent Tort*, 59 GEORGETOWN L.J. 1237, 1237 (1971) (footnotes omitted); *Hunsley v. Giard*, 87 Wash. 2d 424, 553 P.2d 1096 (1976); *see* 2 F. HARPER & F. JAMES, *supra* § 18.4, at 1031; *State v. Goodwin*, 118 N.H. 862, 868, 395 A.2d 1234, 1237–38 (1978) (a person's health depends upon both a sound body and sound mind). The emotional harm, however, cannot be insignificant. Recovery is not to be

permitted for "mere upset, dismay, humiliation, grief and anger." *Reappraisal of Nervous Shock, supra* at 517; *see Krouse v. Graham*, 19 Cal. 3d 59, 562 P.2d 1022, 1031–32, 137 Cal. Rptr. 863, 872–73 (1978).

The emotional harm must be a painful mental experience with lasting effects. *One Step Beyond, supra* at 68. All the States, except one, require that the psychic injury manifest itself by way of physical symptoms. *Dillon v. Legg supra. Dziokonski v. Babineau supra; D'Ambra v. United States supra. Contra Leong v. Takasaki supra.* This latter requirement guarantees that the emotional injury is sufficiently serious to be afforded legal protection. W. PROSSER, *supra* § 54, at 328–29. *But see Vance v. Vance*, 396 A.2d 296, 301 (Md. Ct. Sp. App. 1979). In other words, the harm for which plaintiff seeks to recover must be susceptible to some form of objective medical determination and proved through qualified medical witnesses. *Petition of United States*, 418 F.2d 264, 269 (1st Cir. 1969); *Daley v. LaCroix*, 384 Mich. 4, 179 N.W.2d 390 (1970); *Hunsley v. Giard supra*; *Toms v. McConnell*, 45 Mich. App. 647, 207 N.W.2d 140 (1973); *see Reappraisal of Nervous Shock, supra* at 517. *See generally* Annot., 64 A.L.R.2d 100, 126–28 (1951).

In *Jelley v. LaFlame*, 108 N.H. 471, 238 A.2d 728 (1968), we were concerned that by abandoning the zone of danger rule and allowing bystander recovery for emotional distress, we would expose a defendant to liability that extended far beyond his culpability. Although fear of unlimited liability is a valid concern, we now think that this concern must be weighed against a plaintiff's serious emotional injury that is directly caused by defendant's negligence. *See Hunsley v. Giard*, 87 Wash. 2d at 434, 553 P.2d at 1102. The balance can be maintained by carefully defining the foreseeability factors that are to be applied.

The criteria of foreseeability that must be considered involve the manner in which the plaintiff becomes aware of the injury and the relationship between the third party and the plaintiff. Specifically, the factors are enunciated in *Dillon v. Legg*:

> (1) Whether plaintiff was located near the scene of the accident as contrasted with one who was a distance away from it.

> (2) Whether the shock resulted from a direct emotional impact upon plaintiff from the sensory and contemporaneous observance of the accident, as contrasted with learning of the accident from others after its occurrence.

(3) Whether plaintiff and the victim were closely related, as contrasted with an absence from relationship or the presence of only a distant relationship.

*Dillon v. Legg*, 68 Cal. 2d at 740–41, 441 P.2d at 920, 69 Cal. Rptr. at 80.

These three factors, which include the proximity of time, place, and relationship, have been considered by some commentators to be limitations that must be imposed to prevent unlimited liability and to restrict recovery to those foreseeable plaintiffs who will suffer the most extreme mental distress. *E.g.*, W. PROSSER, *supra* § 54, at 335; *One Step Beyond, supra* at 62–63. Others have considered these factors to be flexible variables that are necessary in determining liability. *E.g.*, *Reappraisal of Nervous Shock*, *supra* at 520 n.34. The Supreme Judicial Court of Massachusetts, recently stated that:

> It does not matter in practice whether these factors are regarded as policy considerations imposing limitations on the scope of reasonable foreseeability . . . or as factors bearing on the determination of reasonable foreseeability itself. The fact is that, in cases of this character, such factors are relevant in measuring the limits of liability for emotionally based injuries resulting from a defendant's negligence. In some instances, it will be clear that the question is properly one for the trier of fact, while in others the claim will fall outside the range of circumstances within which there may be liability.

*Dziokonski v. Babineau*, 380 N.E.2d at 1302 (Mass. 1978) (citations omitted); *see Dillon v. Legg*, 68 Cal. 2d at 741, 441 P.2d at 921, 69 Cal. Rptr. at 81.

We have indicated in this opinion that freedom from mental distress is an interest that is worthy of legal protection and that the reasonable foreseeability test can allow a cause of action to exist to protect this interest. *See Hunsley v. Giard supra*; *cf.*, *New Hampshire Supply Co. v. Steinberg*, 119 N.H. 223, 400 A.2d 1163 (1979) (recognized that severe mental stress may be legal cause of heart attack in workmen's compensation law); *Bothwick v. State*, 119 N.H. 583, 406 A.2d 462 (1979). The question now is whether policy considerations should compel us to bar this cause of action. The most convincing policy reason and the one most often mentioned is the threat of unlimited and burdensome liability if the courts permit recovery. *Jelley v. LaFlame*, 108 N.H. 471, 238 A.2d 728 (1968); *accord Tobin v. Grossman*, 24 N.Y.2d 609, 249 N.E.2d 419, 301 N.Y.S.2d 554 (1969).

In the past, two methods of enforcing this policy objective have been utilized. The "impact rule," *see, e.g., Spade v. Lynn & Boston R.R. Co.*, 168 Mass. 285, 47 N.E. 88 (1897) *overruled by Dziokonski v. Babineau*, 380 N.E.2d 1295 (Mass. 1978), and the "zone of danger rule," *see, e.g., Barber v. Pollock*, 104 N.H. 379, 187 A.2d 788 (1963), are court-created barriers to recovery. Under the "impact rule," there can be no recovery for mental distress unless the plaintiff can prove that he suffered some physical touching as a result of defendant's conduct.

New Hampshire was one of the first States to abolish this bar to recovery. In the case of *Chiuchiolo v. New England Wholesale Tailors*, 84 N.H. 329, 150 A. 540 (1930), Justice Allen stated:

> From the viewpoint of analogy, allowance for mental pain, and for injury to mind and nerve as well as body, is given as items of damage in all cases of liability for personal injury where there is impact. It would seem practically as easy to pretend them and as difficult to disprove them in such cases as in cases where there is no impact and fright is the intervening agency of transmittal. When neurasthenia is claimed as a result of a bodily injury, the connection between the injury and the disease and the extent and severity of the disease are no less uncertain and subject to objective tests than when fright takes the place of bodily impact. It is true that the fright itself may be an issue not easily to be challenged and met, but this does not seem to be of sufficient importance and to furnish sufficient reason to lay down a rule shutting out recovery for its consequences in all cases.

*Id.* at 334, 150 A. at 543. In *Chiuchiolo*, this court was not persuaded that abolishing the "impact rule" would cause a proliferation of fraudulent claims and create liability disproportionate to culpability. *Id.*

The zone of danger rule has replaced the impact rule to bar recovery for parental bystanders. *Jelley v. LaFlame*, 108 N.H. 471, 238 A.2d 728 (1968). Under the zone of danger rule, a plaintiff can recover if he can prove that, because of defendant's negligence, he was within the range of physical danger, and as a result, feared for his own safety. The rationale for the zone of danger rule is that defendant, by threatening the physical safety of the plaintiff, has breached a duty, and as a result, plaintiff can recover for consequent emotional distress. Brody, *Negligently Inflicted Psychic Injuries: A Return to Reason*, 7 VILL. L. REV. 232, 238–39 (1962).

The zone of danger rule has been criticized by several courts and commentators. One court called it "an inadequate measure of the reasonable foreseeability of the possibility of physical injuries resulting from a parent's anxiety arising from harm to his child." *Dziokonski v. Babineau*, 380 N.E.2d at 1300. Because the foreseeability of a serious injury to a parent who perceives a serious accident to her child cannot be determined by a physical zone, the zone of danger rule has been also attacked as denying "psychological reality," *D'Ambra v. United States*, 114 R.I. at 657, 338 A.2d at 531, lacking "strong logical support," *Dziokonski v. Babineau*, 380 N.E.2d at 1300, and obscuring the real issues of whether liability should be permitted. Brody, *Negligently Inflicted Psychic Injuries: A Return to Reason*, 7 VILL. L. REV. 232, 239 (1962). It has also been termed a mechanical rule that does "more harm than good." 2 F. HARPER & F. JAMES, *supra* § 18.4, at 1039.

More than eleven years have passed since the landmark case of *Dillon v. Legg*, in which the California Supreme Court abolished the rigid zone of danger rule and permitted bystander recovery premised on a traditional test of foreseeability. California's subsequent experience demonstrates that the adoption of well-defined foreseeability factors will not lead to unlimited liability, and that the threat of remote and unexpected liability is not a substantial fear. *See, e.g., Hoyem v. Manhattan Beach City School Dist.*, 22 Cal. 3d 508, 585 P.2d 851, 150 Cal. Rptr. 1 (1978); *Justus v. Atchison*, 19 Cal. 3d 564, 565 P.2d 122, 139 Cal. Rptr. 97 (1977); *Krouse v. Graham*, 19 Cal. 3d 59, 562 P.2d 1022, 137 Cal. Rptr. 863 (1977).

Under the emerging law allowing parent recovery for emotional distress, the plaintiff must still prove that his injury was foreseeable, that the defendant was at fault, and that his injury directly resulted from the accident. Plaintiff's burden of proving causation in fact should not be minimized. The emotional injury must be directly attributable to the emotional impact of the plaintiff's observation or contemporaneous sensory perception of the accident and immediate viewing of the accident victim. Therefore, recovery will not be permitted for emotional distress when the plaintiff is merely informed of the matter after the accident or for the grief that may follow from the death of the related accident victim. *Krouse v. Graham*, 562 P.2d at 1031–32, 137 Cal. Rptr. at 872–73. *See generally, D'Ambra v. United States*, 114 R.I. 643, 653, n.5, 338 A.2d 524, 529 n.5 (1975); *Nazaroff v. Super. Ct.*, 80 Cal. App. 3d 553, 145 Cal. Rptr. 657, 664 (1978). The emotional injury must also have physical symptoms. *Hunsley v. Giard*, 87 Wash. 2d 424, 553 P.2d 1096, 1102 (1976).

We adopt the traditional negligence approach and will allow parent recovery for emotional distress. We must now determine whether, in the present case, the manner in which the parents became aware of the injury was reasonably foreseeable to cause them harm so as to state a claim for relief. The test of foreseeability requires a relatively close connection in both time and geography between the negligent act and the resulting injury. The requirement of proximity to the accident scene is satisfied if the facts alleged in counts three and four are taken as true, which we must assume them to be for the purposes of this appeal. *Rowe v. Public Service Co. of New Hampshire*, 115 N.H. 397, 398, 342 A.2d 656, 657 (1978). The house in which both parents were located at the time of the accident was very close to the accident scene. One parent was near enough to hear the accident and to immediately see the victim; the other near enough to immediately become aware of the accident and to immediately see his injured daughter.

The second factor, requiring that the emotional distress must result from a direct emotional impact upon the plaintiffs through their sensory perception and that this perception must be contemporaneous with the accident, imposes a time limitation. That is, recovery will be denied if the plaintiff either sees the accident victim at a later time, or if the plaintiff is later told of the seriousness of the accident. *Hoyem v. Manhattan Beach School Distr.*, 22 Cal. 3d 508, 585 P.2d 851, 150 Cal. Rptr. 1 (1978); *see Justus v. Atchison*, 19 Cal. 3d 564, 565 P.2d 122, 139 Cal. Rptr. 97 (1977).

The allegations of Mrs. Corso's complaint are that she heard a terrible noise, and when she looked out the kitchen door, she saw her daughter lying seriously injured on the ground. Her auditory perception and her immediate observance of the accident are sufficient facts to meet the test of foreseeability and state a cause of action. *See Krouse v. Graham*, 19 Cal. 3d 59, 562 P.2d 1022, 137 Cal. Rptr. 863 (1977); *Archibald v. Braverman*, 275 Cal. App. 2d 253, 79 Cal. Rptr. 723 (1969); *Landreth v. Reed*, 570 S.W.2d 486 (Tex. Civ. App. 1978).

According to Mr. Corso's allegations, he did not hear the sound of the accident; instead he heard his wife scream immediately after the accident that their daughter was run over. At that point, he immediately went to aid his daughter. Because he heard his wife scream and immediately saw his daughter seriously injured, it can be said that he contemporaneously perceived the accident for he "was so close to the reality of the accident as to render [his] experience an integral part of it." *Landreth v. Reed*, 570 S.W.2d at 490. "Manifestly,

the shock of seeing a child severely injured immediately after the tortious event may be just as profound as that experienced in witnessing the accident itself." *Archibald v. Braverman*, 275 Cal. App. 2d at 256, 79 Cal. Rptr. at 725; *accord Nazaroff v. Superior Court*, 80 Cal. App. 3d 553, 145 Cal. Rptr. 657 (1978). Therefore, Mr. Corso's allegations in the complaint are sufficient to withstand a motion to dismiss.

■ The defendant argues that even if we permit parents to recover for emotional shock that was proximately caused by the direct emotional impact from the contemporaneous sensory perception of the accident and immediate observance of the accident victim, we should not allow recovery in the present case because the Corsos fail to allege that they suffered physical consequences. Although such consequences are not alleged in specific terms, reading the allegations in the light most favorable to the plaintiffs, we cannot hold as a matter of law that no physical consequences are claimed in their amended counts. The complaints allege that the plaintiffs suffered from depression. At trial the plaintiffs may be able to prove through the testimony of medical witnesses that their psychic injury was susceptible to objective medical determination. *See Petition of United States*, 418 F.2d 264, 269 (1st Cir. 1969); *Daley v. LaCroix*, 384 Mich. 4, 179 N.W.2d 390 (1970). Accordingly, we cannot hold on this interlocutory appeal that the complaint does not allege any physical consequences.

■ We recognize and adhere to the principle that judicial opinions should not be lightly overruled. It must be remembered, however, that

> *stare decisis* is the viaduct over which the law travels in transporting the precious cargo of justice. Prudence and a sense of safety dictates that the piers of the viaduct should be examined and tested from time to time to make certain that they are sound, strong and capable of supporting the weight above.

*Bosley v. Andrews*, 393 Pa. 161, 176, 142 A.2d 263, 270–71 (1958) (Musmanno, J.). After careful examination of the "piers" of the existing law, we must conclude that the continuation of the "zone of danger" rule imposes unjust limitations on recovery and fails to protect worthy interests. Recovery should not be barred for the serious emotional injury to parents who contemporaneously perceive or witness a serious injury to their child that is caused by defendant's negligence. We no longer believe that abolishing the zone of danger

rule and adopting a traditional negligence approach will lead to unexpected and remote liability.

In summary, we hold that a mother and father who witness or contemporaneously sensorially perceive a serious injury to their child may recover if they suffer serious mental and emotional harm that is accompanied by objective physical symptoms. Any action for negligent infliction of emotional distress must be based on the criteria of foreseeability outlined in this opinion and on the causal negligence of the defendant. *See* RSA 507:7-a (Supp. 1977). In the present case, the parents may proceed with their actions at trial; their amended counts state a cause of action despite the fact that they allege neither that they suffered physical impact nor that they were within the "zone of danger" of defendant's negligence. To the extent that any of our past cases are inconsistent with this holding, they are hereby overruled.

*Exceptions sustained; case remanded.*

GRIMES, J., dissented; BOIS and BROCK, JJ., concurred in the result; DOUGLAS, J., concurred.

GRIMES, J., dissenting: I must respectfully dissent in this case. Although financial compensation is made possible for the plaintiffs in this case, a terrible burden is placed on all users of our highways.

The court recognizes that imposing liability on a defendant far beyond his culpability "is a valid concern" but tells us that the fear of unlimited liability should be weighed against the plaintiff's serious emotional injury. It is news to me that liability in tort law should be determined by the seriousness of the injury. I had always thought that liability and damages were separate issues, and that liability beyond culpability should not be imposed no matter how great the injury. The "fantastic realm of infinite liability," *Amaya v. Howe Ice, Fuel & Supply Co.*, 59 Cal. 2d 295, 379 P.2d 513 (1963), established by this case will burden all those who use our highways.

Past experience teaches me that this is not the end. This case may be limited to parent and child, but what about the child-parent case, or that of the husband and wife, brother and sister, grandparent and grandchild, the fiancee or close friend? There is just no way a logical distinction can be drawn and liability to these people will be thrust upon us in years to come. Love and affection is not necessarily confined to parenthood or even blood relationship.

Although this case professes to be limited to situations where the parent is near enough to hear the accident and then see the child, how

long will it be before the law will be extended to cases where the parent comes to the scene sometime after the accident and from there to the situation where the parent is notified of the accident and sees the child in the hospital? I ask this because once the court enters on this course there is no sensible point at which to stop and the potential liability of highway users will be limitless.

In fact the march down that road has already begun because the father in this case did not hear the accident. What hearing the accident has to do with imposing liability anyway escapes me. When the mother heard the accident she did not know her child was involved; so how could that have affected her "mental tranquility"? How can it be said that the effect on a mother is any different whether she sees the injured child right after the accident or sometime later?

The foreseeability test of the court is elastic. How can it logically be said that it is more foreseeable that a parent will hear an accident and then see the child than it is that the parent will be told of the accident after it happens?

These concerns are not mine alone. They have been expressed many times over the years, but they merit repetition. They were recognized in *Jelley v. LaFlame*, 108 N.H. 471, 238 A.2d 728 (1968), which is overruled today despite the fact that only four years ago in *Deem v. Newmarket*, 115 N.H. 84, 333 A.2d 446 (1975), a unanimous court reaffirmed the soundness of its holding. The concerns are not frivolous. In *Jelley v. LaFlame*, the court called them "weighty and well recognized" and "still persuasive."

Holding the line with the zone of danger rule was not based on logic but upon policy to prevent imposing an unreasonable burden on highway users and, because once the step is taken, there is "no sensible or just stopping point." *Jelley v. LaFlame supra*. Nothing has changed to make it just to impose this unreasonable burden on users of our highways. Accidents are often caused, not by reprehensible conduct, but by momentary inadvertence or judgment which after the fact is found to have been faulty. Slight inadvertence under the court's new rule can cause the dominoes to start falling subjecting the person to suits, not only by the person injured, but by all manner of relatives whose "mental tranquility" is claimed to have been upset.

This case goes beyond most of the cases relied on by the court. In most of the cases, the parent actually saw the accident to the child. This case itself supplies the proof that the concern about escalating liability is valid. From *Dillon v. Legg*, 68 Cal. 2d 728, 441 P.2d 912 (1968), where the parent saw the accident to the present is but eleven short years. Yet this court has now reached out to give causes of action

to those who do not see the accident, but who claim to suffer shock by "sensorially perceiving the accident and immediately viewing the accident victim" and also to those who do not sensorially perceive the accident but are immediately told of it and then view the victim.

However, the genie is now clearly out of the bottle and I can only hope that someone will find a way to get him back in.