Pond v. Majercik                     CV-94-225-M    02/21/96

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


Patricia Pond, Individually and as
Administratrix of the Estate of Scott Pond,
     Plaintiff,

     v.                                        Civil No. 94-225-M

Donald A. Majercik, and Parker Aviation
Enterprises, Inc., Defendants, and
John McGrath, Executor of the
Estate of Mary Jane McGrath,
     Defendant and Third Party Plaintiff,

     v.

Nathan Pond, Gary Pond, William
Batesole, James Parker, Jr.,
Lebanon Riverside Rotary, an
Unincorporated Association, and
the United States of America,
     Third Party Defendants.


O R D E R


     Plaintiff, Patricia Pond ("Pond") sues defendants, the

Estate of Mary Jane McGrath (the "McGrath Estate"), Donald

Majercik, and Parker Aviation Enterprises ("Parker"), seeking

damages for the death of her husband, Scott Pond.  Pond's

theories of recovery include the common law tort of negligent

infliction of emotional distress and loss of consortium.  The

McGrath Estate moves for partial summary judgment, Fed. R. Civ.

P. 56, asserting that there are no disputed issues of material

fact and that defendants are entitled to judgment as a matter of law on both the negligent infliction and loss of consortium claims.  Defendants Majercik and Parker move to join the McGrath Estate's motion for partial summary judgment.  For the reasons stated below, defendants' motions for partial summary judgment are granted in part and denied in part.

## I.    STANDARD OF REVIEW

Summary judgment is proper "if pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A material fact "is one `that might affect the outcome of the suit under the governing law.'"  United States v. One Parcel of Real Property with Bldgs., 960 F.2d 200, 204 (1st Cir. 1992) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  The moving party has the burden of demonstrating the absence of a genuine issue of material fact for trial.  Anderson, 477 U.S. at 256. The party opposing the motion must set forth specific facts showing that there remains a genuine issue for trial, demonstrating "some factual disagreement sufficient to deflect

2

brevis disposition."  Mesnick v. General Electric Co., 950 F.2d
816, 822 (1st Cir. 1991), cert. denied, 112 S.Ct. 2965 (1992).
This burden is discharged only if the cited disagreement relates
to a genuine issue of material fact.  Wynne v. Tufts Univ. Sch.
of Medicine, 976 F.2d 791, 794 (1st Cir. 1992).  In reviewing
defendants' motions for summary judgment, the court construes the
evidence and draws all justifiable inferences in favor of Pond.
Anderson, 477 U.S. at 255.

## II.  FACTUAL BACKGROUND

On July 24, 1993, Patricia Pond attended the Lebanon Air
Show to watch her husband, Scott Pond, perform a parachute jump.
(Pond Tr. at 37-38.)  The act in which Scott Pond was to
participate called for two biplanes, piloted by Donald Majercik
and Mary Jane McGrath, to circle two or three parachutists[1] as
they descended to the airfield.  Patricia Pond watched as the
jump plane carrying her husband and two other parachutists, Nate
and Gary Pond, took off and moved into position for the jump.
(Id. at 46-48.)  She also watched as the two biplanes took off,
following the jump plane.

---

[1] The parties dispute whether two or three parachutists were
supposed to jump.  This factual dispute is not relevant to the
pending motion for partial summary judgment.

When the jump plane reached the proper altitude and position, the parachutists jumped out of the plane. Nate and Gary pond exited the plane first and deployed their parachutes. The first biplane, piloted by Majercik, began circling them as they descended. The second biplane, piloted by McGrath, followed immediately behind the first biplane. At or about the time McGrath began this maneuver, Scott Pond exited the jump plane. McGrath's biplane collided in midair with Scott Pond, tragically causing both of their deaths.

Patricia Pond was observing the act from a position about fifteen feet from the jumpers' anticipated landing zone. (Id. at 54.) She did not observe Scott Pond exit the jump plane. (Id.) Nor did she see, or otherwise perceive, the mid-air collision that killed her husband. (Id. at 96.) Patricia Pond first realized that something had gone awry when she noticed that her husband was free falling longer than was normal. She then saw his emergency parachute, rather than his main parachute, open at an altitude above 2000 feet. (Id. at 52-53.)

As Scott Pond descended, Patricia Pond noticed that his hands and feet were limp and thought he had somehow lost consciousness during the jump. (Id. at 54, 96.) She then saw him land, "sort of in a pile," on the ground. (Id. at 96.)

4

After Scott Pond landed, his parachute fell on top of him, covering his body. (Id. at 96-97.) Patricia Pond ran toward the spot where her husband had landed, but before she could reach the body she was turned back by family members who told her that Scott Pond was dead. Until that point, Patricia Pond did not know that her husband had been killed. (Id. at 55.)

Patricia Pond now sues the McGrath Estate, Donald Majercik, and Parker Aviation, an organizer of the air show, seeking to recover damages for, among other things, the emotional distress she suffered as a direct and proximate result of witnessing her husband's death and for loss of spousal consortium. Defendants counter that the relevant facts are undisputed and that they are entitled to judgment as a matter of law on both claims.

## III. DISCUSSION

### A. Negligent Infliction of Emotional Distress

In Corso v. Merrill, 119 N.H. 647 (1979), the New Hampshire Supreme Court discarded the familiar "zone-of-danger" test for negligent infliction of emotional distress claims by bystanders and replaced it with a tripartite "foreseeability" test borrowed from California common law. Id. at 652-54. The foreseeability test requires a bystander plaintiff to prove: (1) she was a close

5

relation of the victim; (2) there was a close connection in time between the accident and the resulting injury to the plaintiff; and (3) she was geographically close to the accident scene. Wilder v. City of Keene, 131 N.H. 599, 602 (1989) (citing Corso, 119 N.H. at 654, 657, 659). A plaintiff must prove each of these three prongs of the Corso test, often referred to as proximity of relation, time, and geography, in order to succeed on a claim for negligent infliction of emotional distress. Defendants contend that they are entitled to partial summary judgment because the evidence demonstrates that Pond satisfies neither the temporal nor the geographic proximity prong of the Corso test.[2]

Both the temporal and geographic prongs of the Corso test require a certain relationship between the plaintiff and "the accident." In their effort to demonstrate that plaintiff does not meet these two prongs of the test, defendants endeavor to define "the accident" to include only the moment of impact between McGrath's airplane and Scott Pond. The accident, they

---

[2] Defendants, of course, concede that Patricia Pond satisfies the "relational proximity" prong of Corso.

Defendant Majercik contends that Vermont law, rather than New Hampshire law, governs Pond's claims against him. He does not, however, point to any facts or law supporting his position. Because Majercik's choice of law question has not been adequately raised or briefed, the court declines to address it at this time.

argue, does not include any portion of Scott Pond's subsequent descent.

Such a narrow and artificial definition of "the accident" finds little support in New Hampshire law.  In fact, Corso itself defines "the accident" to include events following impact itself. In that case, Mr. Corso was allowed to recover for emotional distress he suffered after his daughter was struck by a car.  Mr. Corso did not see or hear the car striking his daughter; nor did he observe his daughter as she fell to the ground following impact.  Hearing his wife scream, Mr. Corso ran to the scene and there found his daughter lying on the ground, severely injured. Mr. Corso's experience was described by the New Hampshire Supreme Court as follows:  "[I]t can be said that he contemporaneously perceived the accident for he `was so close to the reality of the accident as to render [his] experience an integral part of it.'" Corso, 119 N.H. at 657 (quoting Landreth v. Reed, 570 S.W.2d 486, 490 (Tex. Civ. App. 1978)).

The Corso court recognized that artificial distinctions cannot be drawn between, for example, the moment of impact and the moment the injured victim comes to rest.  Instead, for purposes of the Corso test, the accident must be viewed as a continuum, encompassing a series of discrete moments in time.

7

The key is whether the observation occurs within sufficiently close temporal and geographic proximity that the defendant could reasonably foresee that the plaintiff would suffer severe emotional distress as a result of the observation.

Because of the nature of Scott Pond's accident, a longer-than-usual period elapsed between the moment of impact and the moment he came to rest on the ground. While that extended time frame might make it easier to conceptually separate the discrete events that made up the accident, as noted above, <u>Corso</u> and its progeny do not recognize such artificial distinctions as relevant in determining whether the plaintiff perceived the accident sufficiently close in time and place as to cause foreseeable emotional distress. The accident to which Patricia Pond must have been temporally and geographically proximate in this case includes the collision between McGrath's airplane and Scott Pond, his descent, and his impact with the ground.

### 1. Temporal Proximity

The temporal proximity prong is the heart of the <u>Corso</u> test, "requiring that the emotional distress must result from a direct emotional impact upon the plaintiff[] through [her] sensory perception and that this perception must be contemporaneous with

the accident." Corso, 119 N.H. at 657. In order to fulfill this prong, the plaintiff must demonstrate both that "[t]he emotional injury [is] directly attributable to the emotional impact of the plaintiff's observation or contemporaneous sensory perception of the accident and immediate viewing of the accident victim." Id. at 656.

The record establishes that Patricia Pond contemporaneously perceived the accident and immediately viewed the accident victim. Although she did not observe the precise impact that killed her husband, she did see his body in an extended and alarming free fall shortly after impact. As Scott Pond descended following deployment of his emergency parachute, Patricia Pond also observed that her husband's hands and feet were limp. Believing that he had been injured during the jump, she ran toward him and saw his body land "in sort of a pile" on the ground. Before she reached her husband she was turned back and told that he had been killed.

These facts notwithstanding, defendants argue that Pond cannot fulfill the temporal proximity prong of the Corso test because her emotional distress was not the result of her contemporaneous perception of the accident. Rather, defendants claim, Pond suffered distress only when she was informed by a

9

family member that her husband was dead.  Under Corso, "the shock [must] result[] from a direct emotional impact upon plaintiff from the sensory and contemporaneous observance of the accident, as contrasted with learning of the accident from others after its occurrence."  Id. at 653.

Pond, on the other hand, argues that her distress did result from her perception of the accident and not simply, as defendants contend, from learning from another that her husband was dead.  Evidence submitted by Pond, viewed in the light most favorable to her, supports the conclusion that she suffered severe emotional distress as a result of witnessing her husband's injured body descend, first in a free fall and later under his emergency parachute, as well as from having learned at the time and scene that the worst had occurred.  A report prepared by Pond's psychotherapist, Deborah Jones, states that Pond's emotional distress was caused, at least in part, by "her witnessing the accident with her two year old daughter," and adds that her bereavement has been "complicated by the traumatic stress of how her husband was killed."  Therefore, the record demonstrates that Pond has satisfied the temporal proximity prong of the Corso test for purposes of asserting a negligent infliction of emotional distress claim.

10

## 2. Geographic Proximity

In order to recover for negligent infliction of emotional distress, plaintiff must also show that she was geographically close to the accident scene. Pond has testified, at deposition, that she stood fifteen to twenty feet away from Scott Pond's anticipated landing zone during his descent. As her husband neared the ground, Pond ran closer to the landing site. She was near enough to the accident to observe that the emergency parachute had been deployed, that her husband's hands and feet were limp, and that he appeared unconscious. Viewed in the light most favorable to Pond, the record demonstrates that she also meets the geographic proximity prong of the <u>Corso</u> test. Because Pond's allegations and submissions are sufficient to meet both contested prongs of the <u>Corso</u> test, defendants' motions for partial summary judgment on Pond's claims of negligent infliction of emotional distress must be denied.

## B. Loss of Consortium

Pond also seeks damages for loss of spousal consortium stemming from the death of Scott Pond. Defendants argue that they are entitled to judgment as a matter of law on Pond's loss of consortium claims because, under well-settled New Hampshire

11

law, damages for loss of consortium cease at the time of the spouse's death. Pond concedes, as she must, that "McGrath would be entitled to summary judgment under existing New Hampshire law." (Pond Obj. to Mot. Sum. Judg. at 3.) See Archie v. Hampton, 112 N.H. 13 (1972). Nonetheless, Pond argues that defendants' motions for partial summary judgment should not be granted. Instead, she claims that the New Hampshire Supreme Court would reject this "harsh and irrational" limitation on consortium claims if directly presented with the opportunity to do so and, accordingly, requests this court to certify the question to the New Hampshire Supreme Court pursuant to Rule 34 of the New Hampshire Supreme Court Rules.

Whether to certify a state law issue to the state's highest court is discretionary. Lehman Bros. v. Schein, 416 U.S. 386, 391 (1974); Fischer v. Bar Harbor Banking & Trust Co., 857 F.2d 4, 7 (1st Cir. 1988), cert. denied, 489 U.S. 1018 (1989); Nieves ex rel Nieves v. University of Puerto Rico, 7 F.3d 270, 275 (1st Cir. 1993). Certification is generally appropriate when the legal question is novel and the state's law on the question is unsettled. Lehman Bros., 416 U.S. at 391. The question Pond seeks to certify is not particularly novel, having been

12

last directly addressed by the New Hampshire Supreme Court in
Archie v. Hampton, 112 N.H. 13, 17 (1972), and by this court in
Parker v. Richard Pelletier Transit, Inc., No. C90-32-L, slip op.
at 5-6 (D.N.H. Sept. 20, 1990).

More importantly, the status of New Hampshire's law on the
question of whether damages for loss of consortium cease upon the
spouse's death is not at all unsettled.  As noted above, the New
Hampshire Supreme Court decided, in 1972, that under New
Hampshire law "damages to be recovered by the plaintiff are to be
restricted to her loss of consortium from the time of her
husband's injury to his death."  Archie, 112 N.H. at 17.  Pond
has not directed the court's attention to a single case
interpreting New Hampshire law in a manner contrary to the rule
of Archie.

Pond argues that the majority of states allows a survivor to
claim damages for consortium lost after the death of his or her
spouse.  But in this diversity case the court is obligated to
apply the rules of decision of New Hampshire.  See Erie R.R. v.
Tompkins, 304 U.S. 64 (1938).  As discussed, New Hampshire's law,
though different, is settled.

Finally, a party who chooses the federal forum in a
diversity action, as Pond has done here, "is in a peculiarly poor

13

position to seek certification." Fischer, 857 F.2d at 8 (quoting Cantwell v. University of Massachusetts, 551 F.2d 879, 880 (1st Cir. 1977)). A federal court "should be wary of certification where [the] requesting party merely seeks to persuade [the] state court to extend current state law." Nieves, 7 F.3d at 278 (citing Venezia v. Miller Brewing Co., 626 F.2d 188, 192 n.5 (1st Cir. 1980)).

In a case such as this, where the interpretive signposts of state law are, at present, clear and unambiguous, certification to the New Hampshire Supreme Court would be inappropriate as an unwarranted burden on that court. Armacost v. Amica Mut. Ins. Co., 11 F.3d 267, 269 (1st Cir. 1993). Accordingly, defendants' motions for summary judgment on Pond's claims for loss of consortium are granted, and Pond's motion to certify the question to the New Hampshire Supreme Court is denied.

## IV. CONCLUSION

For the reasons discussed above, defendants' motions for summary judgment on Pond's claims for negligent infliction of emotional distress are denied; their motions for summary judgment on Pond's claims for loss of spousal consortium are granted. Accordingly, the McGrath Estate's motion for partial summary

14

judgment (document no. 79) is granted in part and denied in part, Majercik's motion for partial summary judgment (document no. 102) is granted in part and denied in part, and Parker's motion for partial summary judgment (document no. 86) is granted in part and denied in part.


SO ORDERED.


_____
Steven J. McAuliffe
United States District Judge

February 21, 1996

cc:  Michael G. Gfroerer, Esq.
     Jeffrey B. Osburn, Esq.
     David B. Kaplan, Esq.
     Garry R. Lane, Esq.
     Charles W. Grau, Esq.
     Mark Scribner, Esq.
     David H. Bradley, Esq.
     Douglas J. Miller, Esq.
     Michael G. McQuillen, Esq.
     Richard B. Couser, Esq.
     Ronald L. Snow, Esq.
     James C. Wheat, Esq.