Kidder v. Newell                    CV-96-254-M    11/10/97  C

**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE**


Christine A. Kidder, As Administratrix
of the Estate of Raymond J. Kidder,
and individually, and Fred A. Kidder,
Individually

     v.                                Civil No. 96-254-M

Kathleen Newell, M.D., New England
Pathology Services and Alice Peck Day
Memorial Hospital


**REPORT AND RECOMMENDATION**


    Plaintiffs, Christine A. Kidder, individually and as

Administratrix of the Estate of Raymond J. Kidder, and Fred A.

Kidder, individually, sue Kathleen Newell, M.D., New England

Pathology Services, and Alice Peck Day Memorial Hospital, for the

death of their infant son, Raymond Kidder.  Plaintiffs' theories

of recovery include six counts of negligent infliction of

emotional distress: Complaint of May 1, 1996 (hereinafter

"Complaint I") - Counts III and IV against Newell and VII and

VIII against New England Pathology; Complaint of July 18, 1996

(hereinafter "Complaint II") - Counts III and IV against Alice

Peck Day Memorial Hospital.  Defendant Alice Peck Day Memorial

Hospital moved for partial summary judgment asserting that there are no disputed issues of material fact and that defendants are entitled to judgment as a matter of law on the six counts of emotional distress. Defendant Newell has joined in the motion. For the reasons stated below, I recommend that the defendants' motion for partial summary judgment be granted.

## DISCUSSION

### 1. Standard of Review

Summary judgment is appropriate when the record reveals "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the burden of showing the absence of a genuine issue of material fact for trial. See Anderson v. Liberty Lobby, 477 U.S. 242, 256 (1986). If the moving party carries its burden, the non-moving party must set forth specific facts showing that there remains a genuine issue of material fact for trial, demonstrating "some factual disagreement sufficient to deflect brevis disposition." Mesnick v. General Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991), cert. denied, 504 U.S. 985 (1992). In the context of summary judgment, "'genuine' means that the evidence about the fact is such that a reasonable jury could resolve the point in favor of the non-moving party, [and] 'material' means that the fact is one that 'might affect the outcome of the suit under the governing law.'"

United States v. One Parcel of Real Property with Bldgs., 960 F.2d 200, 204 (1st Cir. 1992) (citing Anderson, 477 U.S. at 248.

The court construes the record in the light most favorable to the non-moving party, the plaintiffs in this case, and draws all reasonable inferences and resolves factual disputes in their favor. See Saenger Org. Inc. v. Nationwide Ins. Licensing Assoc., 119 F.3d 55, 57 (1st Cir. 1997). When the moving party provides properly supported and undisputed facts that lead to only one plausible legal conclusion, summary judgment is appropriate. See Griggs-Ryan v. Smith, 904 F.2d 112, 115-16 (1st Cir. 1990).

2. Facts[1]

Plaintiff, Christine Kidder, began her prenatal treatment with Dr. Newell on October 17, 1994. On that date, Dr. Newell ordered blood work for prenatal screening. The blood was drawn at Alice Peck Day Memorial Hospital (hereinafter "Alice Peck") which sent it to New England Pathology Services, Inc. (hereinafter N.E. Pathology) for analysis. N.E. Pathology, among other analyses, tested for the presence of Anti-Kell antibodies

---

[1]The facts are drawn from the portions of depositions submitted, Mrs. Kidder's affidavit, Dr. Stanley's affidavit, Dr. Drukteinis' reports and the pleadings.

in Mrs. Kidder's blood.[2]  N.E. Pathology's test revealed the presence of the antibodies but it did not report the results to either co-defendant and from October 17, 1994 to at least May 5, 1995 neither co-defendant requested the results or monitored N.E. Pathology for results.

On May 4, 1995, Mrs. Kidder noticed less fetal movement. The next day, after movement totally stopped, her husband took Mrs. Kidder to the hospital.  When Dr. Newell examined Mrs. Kidder, she told Mrs. Kidder that the baby was very sick, that the baby might not survive and that Mrs. Kidder needed to be transferred to Dartmouth-Hitchcock immediately.

At Dartmouth-Hitchcock Mrs. Kidder was anethesized and a C-section was performed while her husband watched through a glass partition.  The infant was rushed to intensive care after delivery.  The resuscitation efforts in ICU, watched by Mr. Kidder, were terminated after approximately thirty minutes.  He broke the news to their families and, when she awakened, to his wife.

The following day Dr. Sty explained what happened with respect to the antibodies destroying red blood cells.  Plaintiffs

_____

[2]The antibody in the mother's blood attacks the fetus' cells eventually destroying them to the point that the red blood cells are unable to carry oxygen and the fetus dies.  If detected, an intrauterine exchange transfusion can rid the fetus of the antibody.

were not told of the N.E. Pathology test results and the reporting and follow-up failures until six weeks later.

Mrs. Kidder, from the moment her baby stopped moving, felt scared, guilty, confused and sad. The feelings woke her up at night and made her feel nauseous and tense. This, Sheila Stanley, Ed.D. opines, is severe emotional distress. Mr. Kidder felt (and feels) terrified, sad and depressed. His heart beats faster, his muscles tighten, he awakens in the middle of the night and feels sick to his stomach. Again Dr. Stanley, although she has not seen Mr. Kidder, is of the opinion that Mr. Kidder experiences extreme emotional distress. Defendant's expert, Dr. Drukteinis, opines that the Kidders do experience "emotional symptoms of grief, mild-to-moderate anxiety, sadness and some depression" which he attributes to the death of Raymond and describes as bereavement.

3.  Analysis

This is a diversity case to which (as the parties appropriately agree) the substantive law of New Hampshire applies. Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1937). Under New Hampshire law, a bystander need not be in the "zone of danger" to recover for negligent infliction of emotional distress. Corso v. Merrill, 119 N.H. 647, 658 (1979). Since Corso, New Hampshire has permitted recovery for negligent

5

infliction of emotional distress where there is (i) a close relationship between bystander and victim, (ii) geographic proximity to the accident, (iii) a close connection in time between the accident and the resulting emotional distress, and (iv) emotional distress accompanied by objective physical injury. See id. at 653-58. Defendants first maintain that they are entitled to partial summary judgment because plaintiffs had no "contemporaneous perception of the accident and immediate observance of the accident victim . . ." Id. at 658. Secondly, defendants maintain that the emotional distress is not accompanied by causally related physical injury. See id.; see also Thorpe v. State, 133 N.H. 299, 303-304 (1990).

a.    physical injury

Defendant Alice Peck initially seeks to support the alleged lack of resultant physical injury on brief extracts from each plaintiff's deposition in which each plaintiff denies physical health problems as a result of the stillbirth delivery of Baby Raymond (document no. 13, memorandum, p.9). The testimony relied upon was in response to questions about physical injury and implicitly connected emotional distress related to the stillbirth. The testimony relied upon is responsive to only one part of the events observed by the parents of the victim, i.e. the stillbirth.

6

Plaintiff has produced specific facts to demonstrate genuine material facts from which a reasonable jury could conclude that each plaintiff suffered physical injury related to and accompanying their emotional distress. Nauseousness, tenseness, sleeplessness, increased heartbeat, weight gain and muscle tenseness are all physical symptoms of the emotional shock. Neither reply brief addresses the issue of physical symptoms or injury being related to the emotional distress. If supported by appropriate expert testimony the physical manifestations set forth in the depositions and affidavits meet the requirement of physical injury related to emotional distress. See Thorpe v. Dept. of Corrections, 133 N.H. 299 (1990) (stomach problems).

The evidence is to be viewed "in the light most favorable to the non-movant, with all reasonable inferences indulged in that party's favor." Pacamor Bearings, Inc. v. Minebea Co., Ltd., 918 F. Supp. 491, 496 (D.N.H. 1996). On the Corso prong requiring that physical injury accompany the emotional distress, defendants have failed to meet their burden and I would recommend denial of the Motion for Summary Judgment on this basis.

   b. Plaintiffs' emotional distress and its relationship to their contemporaneous sensory perception of the accident

This is the principal issue upon which the partial summary judgment battle is joined. The key facts are not in dispute.

7

The anti-kell test was ordered and the blood drawn and forwarded to the laboratory for testing. The analysis results showing the antibodies were not forwarded by N.E. Pathology prior to the stillbirth and neither Dr. Newell or Alice Peck monitored for, or requested, the results. If the test results had been known, a blood exchange transfusion would have been done and Baby Raymond would not have died. On the day following the stillbirth the parents were aware that the death was caused by the mother's antibodies but they were unaware of defendants' negligence or its relationship to the death until six weeks after the stillbirth.

New Hampshire law requires that "the emotional injury must be directly attributable to the emotional impact of the plaintiff's observation or contemporaneous sensory perception of the accident and immediate viewing of the accident victim." Corso, 119 N.H. at 656. As a matter of law was there a "contemporaneous sensory perception of the accident"?

Alice Peck, in its motion, maintains that in a medical malpractice case a sensory perception of an accident requires a sensory perception of a definable perceivable event, namely defendant's conduct (document no. 13, Memorandum, pp. 7-8). Defendants do not claim that the stillbirth was "the accident".[3]

_____

[3]By definition a stillbirth is the birth of a dead child and is thus not even a view of the ultimate injury - the death of the victim.

In fact, Alice Peck states that "there is no definable, perceivable event . . ." (document no. 13, p.8). Defendants say there was no "accident". Instead, as plaintiffs allege in their complaints, the negligence was a continuing failure to send or request the antibody test results which is not a "perceivable event." Complaint I, ¶¶18, 25, 30 and 35; Complaint II, ¶¶19, 26, 31, 36, 42, 49, 54, 59. Defendant Newell's "Joinder" goes one step further, asserting that the necessary sensory perception of the accident is synonymous with "an awareness at the time of the injury of the defendant's conduct, or lack thereof, and its causal relationship to the loved one's injury." (Document no. 14, p.2). Plaintiff, relying principally upon two unpublished decisions of the Superior Court,[4] maintains that the "accident" test is met if the observation is of the injury resulting from the defendant's conduct. In reply, defendants acknowledge that <u>Corso</u> does not require that plaintiffs understand defendants' conduct to be negligent but maintain that, at a minimum, there must be a temporal appreciation or perception of the negligent

---

[4] <u>Hilber v. Horsley</u>, No. 93-C-790, Order on Motion for Summary Judgment (Hillsborough Superior Court, Southern District, May 2, 1995) (the "accident" is the resulting premature death); <u>Aldrich v. Witkin</u>, No. C-94-074 (Belknap County Superior Court, February 15, 1995) (the "accident" is resulting heart attack); but <u>see</u> <u>Bravel v. White</u>, No. 96-C-0238 (Strafford County Superior Court, May 27, 1997) (the "accident" criteria is not met by observation of a slow deterioration from misdiagnosed cancer).

conduct in relation to a definable moment - the accident. Plaintiffs in their reply assert that this court has clearly recognized that <u>Corso</u> does not require appreciation of the conduct.[5]

The arguments of the parties demonstrate the difficulty of applying the <u>Corso</u> standard to many medical malpractice fact patterns. It is not difficult to find a contemporaneous sensory perception of the accident and viewing of the victim where a mother holds a child while a doctor mistakenly injects an unsafe dose of glucose and dye into the child followed shortly by convulsions and a comatose state. <u>See</u> <u>Mobaldi v. Regents of University of California</u>, 55 Cal. App. 3d 573 (1976). It is far more difficult to apply the <u>Corso</u> factors where the emotional distress was caused by an awareness of the distress of the child in the womb, a resultant stillbirth and an unsuccessful resuscitation; where no overt act of negligence is observed and no specific event as a consequence of the negligence is observed; but simply an unperceived failure to obtain test results in time to perform an intrauterine exchange which would have prevented

---

[5] <u>See</u> <u>Pond v. Majercik</u>, No. CV-94-225-M (D.N.H. February 21, 1996) (plaintiff observed parachutist's husband's body descending limply on reserve chute but did not witness the impact with chase plane); <u>Patterson v. Star Island Corp.</u>, No. CV-92-400-B (D.N.H. February 19, 1993) (father heard crowd reaction to son being hit on head by baseball bat).

10

the inevitable natural death from the mother's antibodies.  Does New Hampshire require an "accident" and, if so, what is an "accident" in this context?

Prior to its decision in Corso, New Hampshire denied recovery to parental bystanders who were not in the "zone of danger" but who suffered emotional distress from their observation of an accident and injury to or death of their child. See Jelley v. LaFlame, 108 N.H. 471, 238 A.2d 728 (1968).  The refusal to grant relief was premised upon a balancing of social interests and a concern that such a cause of action had no sensible, rational stopping point.  In his dissent in Corso Justice Grimes wrote:

> Although this case professes to be limited to situations where the parent is near enough to hear the accident and then see the child, how long will it be before the law will be extended . . . [O]nce the court enters on this course there is no sensible point at which to stop . . . .

Corso, 119 N.H. at 660.

The Corso majority set out what it believed were criteria which established the sensible point to stop:

> The emotional injury must be directly attributable to the emotional impact of the plaintiff's observation or contemporaneous sensory perception of the accident and immediate viewing of the

> accident victim. Therefore,
> recovery will not be permitted for
> emotional distress . . . for grief
> that may follow from the death of
> the related accident victim.

Id. at 656 ((citations omitted)(emphasis added)). The New

Hampshire Supreme Court since Corso has shown its determination

not to expand the doctrine. See Nutter v. Frisbee Memorial

Hospital, 124 N.H. 791, 795 (1984) (a parent who views a child

one-half hour after death caused by medical malpractice is not

close enough to experience the accident first hand); Wilder v.

City of Keene, 131 N.H. 599, 603 (1989) (denying recovery to

parents who viewed a child in extremis after an accident but who

did not see or hear the accident, because the facts did not meet

the Corso requirement of a "contemporaneous sensory perception of

the accident, and not, as the plaintiff argues, a perception of

the injury standard"); but see Waid v. Ford Motor Co., 125 N.H.

640 (1984) (permitting Corso to apply retroactively to permit the

emotional distress claim of a wife who came upon the fatal

accident scene of her husband shortly after the accident). In

short, the Corso "perimeters have been vigilantly policed."

Kassel v. Gannett Co., Inc., 875 F.2d 935, 949 (1st Cir. 1989).

As is apparent from Corso itself, New Hampshire does not

require that the parent see the accident but the parent must be

close enough to experience it at first hand. See Nutter, 124

12

N.H. at 795. While plaintiff is correct that <u>Corso</u> does not require a sensory perception of the "impact" portion of an accident, <u>Cf.</u> <u>Pond v. Majerick</u>, <u>supra</u>, it is clear that the New Hampshire Supreme Court requires that the focus must be "on whether the plaintiffs observed or perceived the accident when it occurred, not on whether they observed or perceived the injuries their child sustained." <u>Wilder</u>, 131 N.H. at 604. The requirement that there be an "accident" which causes an "injury" both of which must be observed or perceived, cannot be met by defining "accident" as synonymous with "injury". Otherwise the <u>Corso</u> requirements become not only arbitrary but meaningless as well. "Accident," as used in <u>Corso</u>, must mean the event or events which produce the injury.

The natural process of the mother's antibodies upon the red blood cells of the child is the injury producing event or events. The negligence of defendants was the failure to interrupt that series of naturally occurring, injury producing, events. There simply was no accident for plaintiffs to observe. Plaintiffs did not observe defendants' negligence; did not observe any injury producing event or events; and certainly did not perceive any connection between the negligence or injury producing events and the injury.

To the extent that <u>Hilber</u>, <u>supra</u> and <u>Aldrich</u>, <u>supra</u>

13

represent lower court decisions which equate "injury" with "accident" I view them as inconsistent with the New Hampshire Supreme Court's expressed view that it is the "accident" not the "injury" that must be perceived.  See Wilder, 131 N.H. at 604.  "[L]itigants who reject a state forum in order to bring suits in federal court under diversity jurisdiction cannot expect that new trails will be blazed."  Ryan v. Royal Ins. Co. of America, 916 F.2d 731, 744 (1st Cir. 1990).  I conclude that New Hampshire will reject the journey of the California courts[6], and will apply Corso strictly.

The court fully acknowledges plaintiffs' terrible loss has produced emotional distress.  However, grief resulting from the injury or death itself does not permit recovery under the Corso cause of action.  See Corso, 119 N.H. 656.  Plaintiffs can only

---

[6]After twenty years of relaxation of Dillon "guidelines" the California Supreme Court returned to the guidelines, tightening them into a rule:

> [A] plaintiff may recover damages
> for emotional distress . . . only
> if . . . plaintiff: (1) is closely
> related to the injury victim; (2)
> is present at the scene of the
> injury producing event at the time
> it occurs and is then aware that it
> is causing injury to the victim;
> and (3) as a result suffers serious
> emotional distress.

Thing v. LaChusa, 48 Cal. 3d. 644, 771 P.2d 814 (1989). California came full circle to tighten the requirements.

14

recover for that emotional distress directly caused by a contemporaneous sensory (i.e., conscious perception) of both an accident and the injury to the child. See id. Construing the record most favorably to plaintiffs, the facts lead to only one legal conclusion under Corso that summary judgment is appropriate. I recommend that the summary judgment be entered as to counts III, IV of the May 1, 1996 complaint and as to counts III and IV of the July 18, 1996 complaint.

Any objections to this report and recommendation must be filed within ten days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the district court's order. See Unauthorized Practice of Law Committee v. Gordon, 979 F.2d 11, 13-14 (1st Cir. 1992); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986).


_____
James R. Muirhead
United States Magistrate Judge

Date: November 10, 1997

cc:  Mark A. Abramson, Esq.
     Michael P. Lehman, Esq.
     William L. Chapman, Esq.
     Michael A. Pignatelli, Esq.